COMMUNITY FEDERAL SAVINGS & LOAN ASS'N OF INDEPENDENCE, MO., et al. v. FIELDS.

No. 12156.

Circuit Court of Appeals, Eighth Circuit.

June 5, 1942.

Rehearing Denied June 30, 1942.

Charles M. Miller, of Kansas City, Mo., for appellants.

Ben W. Swofford, of Kansas City, Mo. (M. J. Henderson, M. J. Henderson, Jr., and Herbert Jacob, all of Kansas City, Mo., on the brief), for appellee.

Before SANBORN and WOODROUGH, Circuit Judges, and TRIMBLE, District Judge.

TRIMBLE, District Judge.

The appellee here, Miller Fields, plaintiff in the court below, brought his action in the circuit court of Jackson County, Missouri, to recover $15,000 for alleged breach of a contract of employment. In that action he named as sole defendant the appellant Community Federal Savings and Loan Association, of Independence, Missouri, hereinafter referred to as Community. By an amendment he brought in as party defendant the Federal Savings and Loan Insurance Corporation, receiver of the Community, hereinafter referred to as the receiver. The suit was removed to the federal court by the defendants, motion to remand was overruled, and the case tried to a jury, resulting in a verdict for the plaintiff for $3,500 on which judgment was entered. The overruling of the motion for remand is not assigned as error and is not an issue on this appeal.

Miller Fields was a charter member of the Lee's Summit Building and Loan Association, which was organized under the laws of Missouri, and became secretary and a director thereof, and, according to

his own testimony, controlled a very large per cent of the voting power of the stock. On October 27, 1939, he entered into the contract which is the subject of this action with the Community, which acted through Spencer Salsbury, its president. In that contract it was provided that Miller Fields was to be employed by the Community to manage its Lee's Summit branch office for a period of five years, the Community to pay Fields a salary of $100 per month with other considerations flowing to Fields. This contract set out the duties Fields was to perform. The last paragraph contained the provision that: "This contract is made in contemplation of first party (Community) buying the assets of Lee's Summit Savings and Loan Association," and in the event the sale was not consummated the contract was null and void.

Under date of September 11, 1939, Community had made an offer or proposal to the Lee's Summit Association, under which it was to take over the assets and liabilities of the Lee's Summit Association. The proposal contained the following paragraph: "To continue the maintenance of an office at Lee's Summit, with Mr. Miller Fields in charge, for a period of five years from the date of actual transfer." Nothing was said in this proposal about the salary or consideration to Fields. In addition the proposal provided that it was "made subject to the tentative approval given Community by the Federal Home Loan Bank, of Des Moines, Iowa, in its letter of September 1st, 1939, and the resolution of the Federal Home Loan Bank Board and the Federal Savings and Loan Insurance Corporation, both of Washington, D. C., of which you have been furnished copies by the bank." Neither in the letter mentioned nor the resolution is there any mention of maintaining a branch at Lee's Summit, nor of entering into a contract with Miller Fields for five years, at any salary.

On October 31, 1939, Community acquired by purchase the assets of Lee's Summit Building and Loan Association and continued the office at Lee's Summit, with Miller Fields in charge, from that date until June 11, 1940, at which time a Temporary Conservator, appointed by the Federal Home Loan Bank Board, took charge and closed the office at Lee's Summit, the operation thereof not being profitable in his opinion. The closing of the office ended the services of Miller Fields who up to and including that time had drawn the salary provided in the contract. On June 26, 1940, the receiver, as such, took charge and proceeded to the liquidation of Community in accordance with the rules and regulations and the law.

The separate answer of defendant Community, among other things, denied that the written contract was executed by this defendant, and asserted that if Spencer Salsbury did execute the alleged contract, he was not duly authorized by the Board of Directors duly convened, as required by the charter and by-laws, and the Board of Directors was without power or authority to authorize its execution, and that the contract was ultra vires. It further asserted in its answer that on June 26, 1940, the receiver, as such, took charge of its assets and was liquidating the assets of Community for the benefit of the shareholders and creditors, and that if plaintiff had any just claim against the Community, the same should have been filed with the receiver. It pleaded the failure to file the claim with the receiver in bar of the maintenance and prosecution of the suit here on appeal.

The separate answer of the defendant receiver, among other things, denied the execution of the alleged contract by Community, asserted that Spencer Salsbury was without authority to execute the contract, and that the execution thereof was not authorized by the Board of Directors, duly convened; that the Board of Directors was without authority to authorize the execution of the contract; that the same was contrary to the charter and by-laws of Community, was ultra vires and was without a valid consideration, and was not a valid contract or subsisting obligation of Community. It further denied that R. L. Nagle, as Temporary Conservator of Community, wrongfully discharged Miller Fields, or breached the contract, if it was a valid and binding contract. It then set up that the receiver had duly taken charge on June 26, 1940, as such receiver, and was liquidating the same under the law for the benefit of the shareholders and creditors, and that Miller Fields had not filed with the receiver his claim in accordance with notice to all creditors, duly published, and that the failure to do so barred the maintenance and prosecution of this action which is now here on appeal.

Plaintiff below, Miller Fields, filed a reply and among other things alleged that

Spencer Salsbury had authority as President to execute the contract on behalf of Community, and if he did not have such authority his action was ratified by the Board of Directors of Community by payment to Miller Fields of the salary provided until the Temporary Conservator took charge and closed the office at Lee's Summit on June 11, 1940. He also alleged that the Federal Home Loan Bank of Des Moines, Iowa, acting as agent of receiver and as agent of the Federal Home Loan Bank Board, of Washington, had notice of the alleged contract, and defendants were estopped to assert its invalidity. Also with respect to not having filed his claim with the receiver, he alleged that before filing the suit the agent of the receiver, R. L. Nagle, had orally denied the validity of the alleged claim to plaintiff, and that this oral denial estopped the defendants from asserting the failure to file the claim with the receiver in bar of the prosecution of the suit.

The purported contract of employment whereby Community engaged to employ Miller Fields for a period of five years was unauthorized and ultra vires, as the Community, through its officers and Board of Directors, had no authority to execute the contract or authorize its execution and could not ratify it, and neither of the defendants are estopped to deny its validity.

Under the provisions of the Home Owners' Loan Act of 1933, 12 U.S.C.A. § 1464, the Federal Home Loan Bank Board "is authorized, under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as 'Federal Savings and Loan Associations'". Pursuant to this authority, the charter issued to the Community by the Federal Home Loan Bank Board, in the third paragraph of Section 3, provides, among other things: "The association shall have perpetual succession and power to sue and be sued, * * * to appoint officers and agents as its business shall require and allow them suitable compensation; to have by-laws not inconsistent with the constitution or laws of the United States, this charter, and rules and regulations of the Federal Home Loan Bank Board. * * * The association shall have such powers as are conferred by law and shall exercise its powers in conformity with the Home Owners'

Loan Act of 1933 and all laws of the United States as they now are, or as they may hereafter be amended, and with the rules and regulations made thereunder which are not in conflict with this charter."

Section 6 of the by-laws of the Community provides:

"Powers of the Board:—the board of directors shall have power— * * *

"(c) To fix the compensation of directors, officers, and employees; and to remove any officer or employee at any time with or without cause."

Section 10 of the by-laws of the Community provides:

"Amendment—These by-laws may be amended at any time by a two-thirds affirmative vote of the board of directors, or by a vote of the members of the association. Each and every amendment shall be subject to the approval of the Federal Home Loan Bank Board, and shall be ineffective until such approval shall be given * * * *," with an exception of no consequence here.

Section 203.16 of the Rules and Regulations promulgated by the Federal Home Loan Bank Board, acting pursuant to 12 U.S.C.A. § 1464(a), provides: "No Federal association may establish or maintain a branch office without the prior written approval of the Board."

█ These rules and regulations have the force and effect of law, for, as stated above, the Home Owners' Loan Act of 1933 gave to the Federal Home Loan Bank Board power and authority to make rules and regulations with respect to federal savings and loan associations, which were binding on the Community and its Board of Directors.

In Maryland Casualty Company v. United States, 251 U.S. 342, 349, 40 S.Ct. 155, 157, 64 L.Ed. 297, Mr. Justice Clarke, speaking for the Court, said: "It is settled by many recent decisions of this court that a regulation by a department of government, addressed to and reasonably adapted to the enforcement of an act of Congress, the administration of which is confided to such department, has the force and effect of law if it be not in conflict with express statutory provision."

Mr. Justice Brandeis, speaking for the Court in United States v. Morehead, 243 U.S. 607, 613, 37 S.Ct. 458, 460, 61 L.Ed. 926, said: "Defendant contends that this regulation, which has been enforced con-

tinuously for nearly thirty-five years, is invalid. Since the Land Department is expressly charged with the duty of enforcing the public land laws by appropriate regulations, and the regulation in question was duly promulgated, the assertion of its invalidity must be predicated either upon its being inconsistent with the statutes or upon its being in itself unreasonable or inappropriate." United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563; United States v. Birdsall et al., 233 U.S. 223, 231, 34 S.Ct. 512, 58 L.Ed. 930; Sawyer v. United States, 2 Cir., 10 F.2d 416.

■ This contract is void, and not merely voidable, and may not, therefore, be ratified by the conduct of the parties, nor are the defendants estopped to deny its validity.

In the case of McCormick v. Market National Bank of Chicago, Illinois, 165 U.S. 538, 549, 17 S.Ct. 433, 436, 41 L.Ed. 817, Justice Gray, speaking for the Court, said:

"The lease sued on, therefore, was clearly prohibited by the very terms of the statute from which the association assumed to derive its power to execute the lease.

"The doctrine of ultra vires, by which a contract made by a corporation beyond the scope of its corporate powers is unlawful and void, and will not support an action, rests, as this court has often recognized and affirmed, upon three distinct grounds: The obligation of any one contracting with a corporation to take notice of the legal limits of its powers; the interest of the stockholders, not to be subject to risks which they have never undertaken; and, above all, the interest of the public, that the corporation shall not transcend the powers conferred upon it by law. [Citing cases.]

"When the corporation is created by a charter granted by the legislature, any person dealing with it is bound to take notice of the terms of the charter, and of the general laws restricting or defining the powers of the corporation. [Citing cases.] In like manner, when the corporation is formed under general laws, by the recording or filing in a public office of the required articles of association and certificate, any person dealing with the association is bound to take notice of the documents recorded or filed, upon which, as authorized and controlled by the general laws, depend the existence of the corporation, the extent of its corporate powers, and its capacity to act as a corporation."

This Court, in the case of Merchants' Bank of Valdosta v. Baird, 8 Cir., 160 F. 642, 645, 646, 17 L.R.A.,N.S., 526, held to the same effect, saying: "It cannot for the accommodation of another indorse his note or guarantee the performance of obligations in which it has no interest. Such an act is an adventure beyond the confines of its charter, and, when its true character is known, no rights grow out of it, though it has taken on in part the garb of a lawful transaction. [Citing cases.] An act that is void because beyond the power of a national bank cannot be made good by estoppel." McCormick v. Market National Bank, supra; California Bank v. Kennedy, 167 U.S. 362, 17 S.Ct. 831, 42 L.Ed. 198.

The appellee in his brief has cited many cases to support his contention that this contract is a legal one, or, if ultra vires in its inception, was ratified in effect by the knowledge and conduct of the parties, and the defendants are estopped to deny its validity. A careful reading of the cases relied on fails to convince us, and it would serve no useful purpose to take up each case and distinguish it.

If through the method and procedure which the parties pursued here the Community could enter into this contract, without authority, and then estop itself and the other defendants here from denying the validity of the contract, it would, in effect, be the amendment of its charter and by-laws, without the approval of the Federal Home Loan Bank Board, contrary to the provisions of its charter and by-laws. Here the power to estop would be the power to amend. It is a well-known axiom that what one cannot do as the crow flies he may not do as the fox runs. If this could be done, such rules and regulations would be but footless words, without force or life.

■ No injustice will be done in this case by holding the contract void, for Miller Fields, the appellee, was bound to take notice of the power and authority of the Community to enter into this contract of employment and for the maintenance of the branch office for a definite time. McCormick v. Market National Bank, supra; Merchants' Bank of Valdosta v. Baird, supra. But he testified that he had actual knowledge that this contract was unau-

thorized and beyond the authority and power of the Community and its Board of Directors, therefore ultra vires, unless the rules and regulations were complied with.

The holding of the court that the contract is ultra vires and that the parties defendant, appellants here, are not estopped to deny its validity, requires that the case be reversed and dismissed, and there is no necessity for passing upon other questions raised on appeal.

■ The court below was in error in submitting the case to the jury, as the question of the ultra vires of the contract was one of law for the court, and there was no question of fact for the jury to pass upon.

The judgment appealed from is reversed and the case remanded with directions to dismiss the complaint.