**RESOLUTION TRUST CORPORATION,**
as receiver for Missouri Savings
Association, Appellant,

v.

**HOME SAVINGS OF AMERICA,**
Appellee.

No. 90–2174.

United States Court of Appeals,
Eighth Circuit.

Submitted April 9, 1991.

Decided Oct. 7, 1991.

David S. Slavkin, St. Louis, Mo., argued (Daniel R. O'Neill and Richard P. Dooling, on the brief), for appellant.

Kenton E. Knickmeyer, St. Louis, Mo., for appellee.

Before McMILLIAN and WOLLMAN, Circuit Judges, and PECK,* Senior Circuit Judge.

McMILLIAN, Circuit Judge.

The Resolution Trust Corp. (RTC), as receiver for Missouri Savings Association (Missouri Savings), appeals from a final order entered in the District Court[1] for the Eastern District of Missouri dismissing Missouri Savings' complaint against Home Savings of America (Home Savings), successor in interest to Republic of Texas Savings Association (Republic), for breach of a repurchase agreement. *Missouri Savings Ass'n v. Home Savings of America,* No. 84–1523–C–4 (E.D.Mo. July 30, 1990) (order of dismissal per stipulation). For reversal, RTC argues the district court erred in holding the repurchase agreement was illegal because the federal sale-without-recourse regulation, 12 C.F.R. § 563.23 (1980) (rescinded in 1982), applied only to sellers, not buyers, and, even if the repurchase agreement was illegal, it was nonetheless enforceable. For the reasons discussed below, we affirm the order of the district court.

This is the second appeal of this case. The following statement of facts is taken in large part from the first appeal, *Missouri*

*Savings Ass'n v. Home Savings of America,* 862 F.2d 1323, 1324–25 (8th Cir.1988).

Missouri Savings and Republic were state-chartered savings associations subject to regulation by the Federal Home Loan Bank Board. In 1976 Republic and Missouri Savings executed a "Loan Participation Agreement" under which Missouri Savings agreed to purchase participation interests in loans originated by Republic. The agreement was modified to require Republic to substitute for any loan in default another loan providing an equivalent net yield of interest. In October 1979 Missouri Savings agreed to purchase a 90% participation interest, not to exceed a total of $4 million, in certain loans. The loans had a four-year term and financed a real estate development in San Antonio, Texas. The October 1979 agreement was amended by several letters. The first letter provided that Republic would "substitute any loan that becomes over ninety (90) days in arrears on an equal yield basis." Another letter dated March 14, 1980, provided in part that Republic "will have the loan moved at the end of the four year term." Missouri Savings alleged that this second letter was in effect a repurchase agreement.

In 1980, pursuant to the loan participation agreement, as modified, Missouri Savings purchased the 90% participation interest in 128 first mortgage loans secured by first liens on various townhouses in the San Antonio development. By the end of the four-year term of the participation agreement in 1984, some of the loans had been sold to third-parties, others had been foreclosed, others had been refinanced, and still others were in force. In the meantime, in 1982, Republic had become insolvent and had merged with Home Savings. Missouri Savings demanded that Home Savings repurchase Missouri Savings' 90% participation interest in the remaining loans. Missouri Savings based its demand on the March 14 letter, claiming that the statement in the letter that Repub-

---

* The Honorable John W. Peck, Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

1. The Honorable Clyde S. Cahill, United States District Judge for the Eastern District of Missouri.

lic "[would] have the loan moved at the end of the four year term" was a promise by Republic to repurchase the loans. Home Savings refused to repurchase the loans.

Missouri Savings then filed this action against Home Savings in federal district court for breach of contract seeking specific performance or, in the alternative, damages. Missouri Savings alleged that Home Savings had failed to repurchase the participation interests, to provide certain financing and to substitute new loans for loans in default. Home Savings argued the March 14 letter, which allegedly contained the repurchase agreement, was not part of the loan participation agreement, the substitution and repurchase provisions were illegal and therefore unenforceable, and Missouri Savings had failed to perform a condition precedent. The district court granted summary judgment in favor of Home Savings, holding that the March 14 letter was not part of the loan participation agreement and was therefore parol evidence which could not be admitted into evidence. The district court also held that, even if the March 14 letter was part of the loan participation agreement, parol evidence was inadmissible to explain the letter because the letter was not ambiguous. On appeal this court reversed and remanded, holding there was sufficient evidence to create a genuine issue of material fact about whether the parties intended the March 14 letter to form part of the loan participation agreement. 862 F.2d at 1326.

On remand Home Savings renewed its motion for summary judgment. The district court granted partial summary judgment in favor of Home Savings, on the ground that the substitution agreement was illegal and therefore unenforceable, and set the claim for breach of the repurchase agreement for trial. By this time, the RTC had been appointed as receiver of Missouri Savings. Shortly before trial was

scheduled to begin, the parties stipulated that, if applicable, the illegality rationale applied to the repurchase agreement as well as the substitution agreement and would require judgment in favor of Home Savings. RTC reserved the right to appeal the judgment. The district court accepted the parties' stipulation and entered judgment in favor of Home Savings. This appeal followed.

## VIOLATION OF REGULATION

On appeal the parties have focused their arguments on the repurchase agreement. From 1971 to September 1980, the regulation at issue, 12 C.F.R. § 563.23 (1980), provided that "[a]ll loans and participation interests in loans sold by an insured institution shall be sold without recourse."[2] In 1980 the prohibition against sales with recourse was relaxed somewhat, see 45 Fed. Reg. 61,596, 61,596–97 (1980) (exceptions not relevant to the present case), and, in February 1982, the prohibition against sales with recourse was rescinded. See 47 Fed.Reg. 4049, 4050–52 (1982). However, the regulation was in effect in 1976 when the parties entered into the loan participation agreement and in March 1980 when they entered into the repurchase agreement. The parties have stipulated that the repurchase agreement obligated Republic, now Home Savings, to repurchase a participation interest in promissory notes that were in default at the time of repurchase.

RTC argues the repurchase agreement did not violate the federal sale-without-recourse regulation because the regulation applied only to the sale of loans by the seller, here Republic (now Home Savings), and not the buyer, Missouri Savings (now RTC). RTC argues the regulation was relevant only to the selling institution's continued eligibility for federal deposit insurance and was not intended to affect contracts between an insured institution and another party. We disagree.

2. The term "without recourse" means,

in connection with the sale of a loan or a participation interest in a loan, without any agreement or arrangement under which the purchaser is to be entitled to receive from the seller any sum of money or thing of value, whether tangible or intangible (including any

substitution), upon default in payment of any loan or mortgage involved or in any part thereof or to withhold or to have withheld from the seller any sum of money or any such thing of value by way of security against any such default.

12 C.F.R. § 561.8 (1980).

■ The threshold issue is whether the repurchase agreement violated federal law. *See Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 83, 102 S.Ct. 851, 859, 70 L.Ed.2d 833 (1982). We apply federal law to determine whether the repurchase agreement violated the federal sale-without-recourse regulation. *See Walsh v. Schlecht,* 429 U.S. 401, 407–08, 97 S.Ct. 679, 684–85, 50 L.Ed.2d 641 (1977). Federal regulations have the force and effect of law. *See, e.g., Community Federal Savings & Loan Ass'n v. Fields,* 128 F.2d 705, 707 (8th Cir.1942) (federal branch banking regulation).

■ The repurchase agreement was clearly "with recourse" in violation of the regulation. Under the repurchase agreement, Missouri Savings as the buyer was entitled to receive from Republic as the seller money, or other loans, in exchange for loans in default at the time of repurchase. This is the kind of contingent financial liability that the prohibition against sales with recourse was intended to prevent. The fact that the regulation was later rescinded cannot validate the repurchase agreement. *See Rutkin v. Reinfeld,* 229 F.2d 248, 256 (2d Cir.) (absent express legislative intent, repeal of prohibition cannot validate illegal contract to manufacture and distribute liquor), *cert. denied,* 352 U.S. 844, 77 S.Ct. 50, 1 L.Ed.2d 60 (1956). Nor is violation of the regulation somehow excused by the possibility of regulatory enforcement action. *Cf. Quinn v. Gulf & Western Corp.,* 644 F.2d 89, 93 (2d Cir. 1981) (contingency fee contract entered in violation of procurement regulations held not enforceable; court rejects argument that denial of recovery would permit windfall because government can recover contingency fee).

## ENFORCEABILITY

■ We turn next to the issue of enforceability. The district court held that the repurchase agreement was illegal and therefore unenforceable. RTC argues that the defense of illegality is not absolute and that an illegal contract may be enforced if the interest in enforcement outweighs the public policy against enforcement. In support of enforcement, RTC argues that the regulation did not provide that sales with recourse were void, the parties contemplated repurchase, the regulation has since been rescinded, and, unless the repurchase agreement is enforced, Home Savings will receive a $4 million windfall. We disagree.

■ In general, a contract entered in violation of federal statutory or regulatory law is unenforceable. *See Comdisco, Inc. v. United States,* 756 F.2d 569, 576 (7th Cir.1985) (Treasury Regulation Y); *Quinn v. Gulf & Western Corp.,* 644 F.2d at 92–93 (federal procurement regulations). This is because "one who has ... participated in an illegal act cannot be permitted to assert in a court of justice any right founded upon or growing out of the illegal transaction." *Jackson Purchase Rural Electric Cooperative Ass'n v. Local Union 816, International Brotherhood of Electrical Workers,* 646 F.2d 264, 267 (6th Cir.1981) *(Jackson Purchase)* (citations omitted); *see also United States v. Mississippi Valley Generating Co.,* 364 U.S. 520, 563, 81 S.Ct. 294, 316, 5 L.Ed.2d 268 (1961). This rule was applied by this court in *Community Federal Savings & Loan Ass'n v. Fields.* In that case the court held that an employment contract which violated a federal regulation prohibiting branch banking without prior agency approval was void and refused to enforce it. 128 F.2d at 707. Under this approach, the repurchase contract at issue in the present case was void because it violated the sale-without-recourse regulation and was therefore unenforceable.

We acknowledge, however, as argued by RTC, that federal law on the enforceability of illegal contracts has not been consistent. *See Northern Indiana Public Service Co. v. Carbon County Coal Co.,* 799 F.2d 265, 273 (7th Cir.1986) (comparing absolute position against enforcement taken in government contract cases such as *United States v. Mississippi Valley Generating Co.,* 364 U.S. at 563–66, 81 S.Ct. at 316–18, with more flexible position taken in antitrust cases such as *Kelly v. Kosuga,* 358 U.S. 516, 519, 79 S.Ct. 429, 431, 3 L.Ed.2d 475 (1959)). Some federal courts have applied

this less-than-absolute rule and have refused to enforce illegal contracts only if the statute or regulation explicitly provides that contracts in violation are void[3] or if the interest in enforcement clearly outweighs the public policy against enforcement. *See Northern Indiana Public Service Co. v. Carbon County Coal Co.,* 799 F.2d at 273 (court must consider "reciprocal dangers of overdeterrence and underdeterrence" in deciding whether to enforce illegal contract); *Jackson Purchase,* 646 F.2d at 267; *California Pacific Bank v. SBA,* 557 F.2d 218, 224 (9th Cir.1977); *see generally* Restatement (Second) of Contracts § 178(1) (1979).

In the present case, enforcement is not barred by the regulation because the regulation itself did not explicitly provide that sales with recourse were void. This is not, however, a case in which the interest in enforcement clearly outweighs the public policy against enforcement. The parties were aware of the regulatory prohibition against sales with recourse, and the record indicates that they specifically structured the repurchase agreement in such a way as to avoid the prohibition. The public policy promoted by the regulation was the protection of financial institutions from the risk arising from contingent liabilities created by sales with recourse. The prohibition was relaxed in part and later rescinded, but only when financial institutions were required to meet new capital reserve requirements. We leave the parties in the position in which they put themselves. *See United States v. Mississippi Valley Generating Co.,* 364 U.S. at 563, 81 S.Ct. at 316; *Gilbert v. Edwards,* 276 S.W.2d 611, 620 (Mo. Ct.App.1955).

In sum, we hold the district court did not err in holding that the repurchase agreement violated the federal sale-without-recourse regulation and was illegal and therefore unenforceable.

---

**3.** *See, e.g., Kasier Steel Corp. v. Mullins,* 455 U.S. 72, 84–85, 102 S.Ct. 851, 859–60, 70 L.Ed.2d 833 (1982) (discussing § 8(e) of the National Labor Relations Act, 29 U.S.C. § 158(e), which expressly provides that any contract containing a hot cargo clause shall be unenforceable and void).

Accordingly, we affirm the order of the district court.