March 19, 1993 UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1779

PAUL ARPIN VAN LINES, INC.,

Plaintiff, Appellee,

v.

UNIVERSAL TRANSPORTATION SERVICES, INC. a/k/a
UNIVERSAL TRANSPORTATION SERVICES LIMITED, ET AL.

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Frances J. Boyle, U.S. District Judge]

Before

Torruella, Circuit Judge,

Bownes, Senior Circuit Judge,

Cyr, Circuit Judge.

Nicholas Gorham, with whom Edmund L. Alves, Jr., and Gorham

and Gorham were on brief, for appellant.

Richard G. Galli, with whom Barbara Harris and Richard Galli

& Associates Incorporated were on brief, for appellee.

March 19, 1993

BOWNES, Senior Circuit Judge. On October 12, 1989,
BOWNES, Senior Circuit Judge.

Universal Transportation Services, Inc., entered into a

contract with Paul Arpin Van Lines, Inc. Arpin is primarily

in the business of moving and storing household goods and

furniture. Universal is in the business of soliciting

customers and accounts for moving and storage companies. The

contract had a term of three years, with a provision for

year-to-year extensions after the three-year term had

expired. On November 8, 1990, Arpin notified Universal that

it was terminating the contract. After Universal refused to

accede to pre-term cancellation, Arpin, on May 3, 1991,

filed a declaratory judgment action in the district court of

Rhode Island, seeking a judgment that: (a) the contract is

"canceled, rescinded or . . . null and void for illegality";

(b) that the contract is "illegal, unlawful and

unenforceable."

Universal duly answered, denying that there was any

legal basis for terminating the contract. Universal also

brought a counterclaim on its own behalf and on behalf of

McGowan Associates, Inc. The counterclaim states that

Michael J. McGowan is the principal shareholder and president

of Universal and McGowan Associates, Inc. The counterclaim

alleged three counts: Count I sought damages of $300,000 for

Arpin's attempt to cancel the contract prior to its

-2-

termination date; Count II alleged violations of restrictive

covenants in the contract and claimed damages of $300,000;

Count III alleged interference by Arpin with a contractual

relationship between another moving company, Richard J.

Coriell & Co., Inc., and both Universal and McGowan

Associates, Inc.; damages of $300,000 were claimed.

The case was tried, jury-waived, before the

District Court of Rhode Island. The district court found

that McGowan and the business entities he controlled were

"brokers" and as such were required to be licensed by the

Interstate Commerce Commission pursuant to 49 U.S.C.

10921.1 It is undisputed that neither McGowan, Universal,

nor McGowan Associates were licensed by the ICC. The court

therefore held that the contract was illegal. It found that

Universal was not entitled to commissions it might have

earned over the remaining two-year term of the contract. The

court, however, held that Universal was entitled to collect

the commissions it had earned during the time the contract

was in effect. It found that Universal was entitled to

"$3,231.05 of restitution for unreported and unpaid

commissions and $7,891.27 of restitution for reported, but

unpaid,
commissions."
Thedistrictcourt
alsodismissed
thecounterclaim.

1 49 U.S.C. 10921 provides in pertinent part that a person
may be a broker for motor carriers, "only if the person holds
the appropriate certificate, permit or license issued under
this chapter authorizing the transportation or service."

-3-

Appellants, Universal and McGowan Associates,

dispute the district court's holding that they were not

entitled to the commissions they would have earned over the

unexpired term of the contract. They have not appealed the

district court's computation of the commissions due them for

business generated during the time the contract was in

effect. The appellee, Arpin, has not appealed the award of

commissions. The root issue on appeal, therefore, is whether

appellants can recover, as damages, the commissions they

would have earned if the contract had remained in effect for

its three-year term. We hold they cannot.

The Enforceability of the Contract

Appellants argue first that the contract should

have been enforced regardless of whether McGowan2 was an

unlicensed broker. We note first that the contract here was

not intrinsically illegal; it was not a criminal conspiracy

or one whose purpose directly violated the prohibition of a

statute. The question is whether the contract is

unenforceable because McGowan did not have a broker's license

from the ICC, as required by 49 U.S.C. 10921. The general

rule is that an otherwise valid contract that results in the

violation of a public-protection statute or regulation is

unenforceable. Resolution Trust Corp. v. Home Sav. of Am.,

2 We follow the lead of the parties and refer to
defendants appellants as McGowan.

-4-

946 F.2d 93, 96 (8th Cir. 1991); Securities Industry Ass'n.

v. Connolly, 883 F.2d 1114, 1123 n.7 (1st Cir. 1989), cert.

denied, 496 U.S. 956 (1990); Shinberg v. Bruk, 875 F.2d 973

(1st Cir. 1989); Smithy Braedon Co. v. Hadid, 825 F.2d 787,

790 (4th Cir. 1987); 6A Arthur Lynton Corbin, Corbin on

Contracts, 1512, p. 711 (1962). See Restatement (Second)

of Contracts 2d 181 (1981).

This general rule, however, is almost as much

honored in the breach as in the observance. The Seventh

Circuit has pointed out that "the defense of illegality,

being in character if not origins an equitable and remedial

doctrine, is not automatic but requires . . . a comparison of

the pros and cons of enforcement." Northern Indiana Pub.

Serv. Co. v. Carbon County Coal Co., 799 F.2d 265, 273 (7th

Cir. 1986). In that case the court held the contract was

enforceable, id.; it also noted that the statute violated was

"an anachronism a regulatory statute on which the sun set

long ago." Id. at 274. In Resolution Trust the court

observed:

Some federal courts have applied this
less-than-absolute rule and have refused
to enforce illegal contracts only if the
statute or regulation explicitly provides
that contracts in violation are void, or
if the interest in enforcement clearly
outweighs the public policy against
enforcement.

946 F.2d at 96-97 (footnote and citations omitted). The

court held that the case before it was not one in which the

-5-

interest in contract enforcement clearly outweighed the

public policy against enforcement and held the contract

"illegal and therefore unenforceable." Id.

McGowan relies on two Supreme Court cases in

arguing for enforcement of the contract. In Bruce's Juices

v. American Can Co., 330 U.S. 743 (1947), the Court held that

it was no defense to a suit for collection of notes that the

seller had engaged in price discriminations against the buyer

violating the Robinson-Patman Act. The Act prescribed

criminal penalties and entitled injured persons to treble

damages, but did not specifically render the sales, for which

the notes were given, illegal or the purchase price

uncollectible. During the course of its opinion, the Court

stated:

But when the contract sued upon is not
intrinsically illegal, the Court has
refused to allow property to be obtained
under a contract of sale without
enforcing the duty to pay for it because
of violations of the Sherman Act not
inhering in the particular contract in
suit and has reaffirmed the "doctrine
that 'where a statute creates a new
offense and denounces the penalty, or
gives a new right and declares the
remedy, the punishment or the remedy can
be only that which the statute
prescribes.'" D.R. Wilder Mfg. Co. v.

Corn Products Refining Co., 236 U.S. 165,

174-175; Connolly v. Union Sewer Pipe

Co., 184 U.S. 540.

Id. at 755. In Kelly v. Kosuga, 358 U.S. 516 (1959), the

Court upheld the right of a seller to recover from the buyer

-6-

the unpaid balance due on a lawful sale even though the sale

was made pursuant to an agreement which violated 1 of the

Sherman Act. The Court noted:

As a defense to an action based on
contract, the plea of illegality based on
violation of the Sherman Act has not met
with much favor in this Court. Id. at

518 (footnote omitted).

We think that the precedential value of these

holdings has been limited by two subsequent Supreme Court

cases. In United States v. Mississippi Valley Co., 364 U.S.

520 (1961), the Court held that the activities of a

consultant retained by the government violated a statute

prohibiting one retained by the government from engaging in

activities constituting a conflict of interest. It held that

this alone precluded the respondent from enforcing his

consulting contract with the government. Id. at 525. The

Court noted that the conflict-of-interest statute did not

"specifically provide for the invalidation of contracts which

are made in violation of the statutory prohibition."

Nevertheless, the Court held that the consulting contract

could not be enforced. It stated:

Were we to decree the enforcement of such
a contract, we would be affirmatively
sanctioning the type of infected bargain
which the statute outlaws and we would be
depriving the public of the protection
which Congress has conferred.

Id. at 563. In Kaiser Steel Corp. v. Mullins, 455 U.S. 72

(1982), the issue was

-7-

whether a coal producer, when it is sued
on its promise to contribute to union
welfare funds based on its purchases of
coal from producers not under contract
with the union, is entitled to plead and
have adjudicated a defense that the
promise is illegal under the antitrust
and labor laws.

Id. at 74. The Court held that the coal producer was

entitled to so plead. At the start of its analysis the Court

stated:

There is no statutory code of federal
contract law, but our cases leave no
doubt that illegal promises will not be
enforced in cases controlled by the
federal law.

Id. at 77. The Court discussed Kelly v. Kosuga, supra, at

length and found that Kosuga "contemplated that the defense

of illegality would be entertained in a case such as this."

Id. at 82.

We hold that under the facts of this case the

contract between the parties was unenforceable as to the

remaining two-year term, during which time McGowan performed

no services for Arpin. As the district court pointed out,

the ICC broker requirement was enacted to protect the public

from fraud and/or incompetent motor carrier brokers.

Although there is no indication that McGowan was either

fraudulent or incompetent, his failure to obtain a broker's

license cannot be ignored or forgiven. There is no point in

speculating why McGowan did not obtain a license. The record

evinces that he had worked in the field of transportation of

-8-

household goods for many years. It can, therefore, be fairly

inferred that McGowan knew of the ICC broker's licensing

requirement. There was also record evidence from which it

could be found that McGowan, in answer to a direct question,

stated he had an ICC broker's license. This was a knowing

misrepresentation, even though it was not made directly to

Arpin. Viewing the facts in light of the applicable case

law, we find that it would subvert the public-protection

policy of the statute to enforce the unexpired and not

performed term of the contract.

Broker or Agent

The district court held that McGowan was a broker,

not a household goods agent, and as such had to be licensed

by the ICC. Appellants argue that this was error. We agree

with the district court. The starting point is 49 U.S.C.

10921 which provides:

Requirement for certificate, permit, or
license
Except as provided in this subchapter or
another law, a person may provide
transportation or service subject to the
jurisdiction of the Interstate Commerce
Commission under subchapter II, III, or
IV of chapter 105 of this title or be a
broker for transportation subject to the
jurisdiction of the Commission under
subchapter II of that chapter, only if
the person holds the appropriate
certificate, permit, or license issued
under this subchapter authorizing the
transportation or service.

A broker is defined as a person,

-9-

other than a motor carrier or employee or

agent of a motor carrier, that as a

principal or agent sells, offers for
sale, negotiates for, or holds itself out
by solicitation, advertisement, or
otherwise as selling, providing or
arranging for, transportation by motor
carrier for compensation.

49 U.S.C. 10102(1) (emphasis added). The distinction

between agent and broker, inherent in the statute, is made

explicit in the regulations:

Broker means a person who, for
compensation, arranges, or offers to
arrange, the transportation of property
by an authorized motor carrier. Motor
carriers, or persons who are employees or
bona fide agents of carriers, are not
brokers within the meaning of this
section when they arrange the
transportation of shipments which they
are authorized to transport and which
they have accepted and legally bound
themselves to transport.

Bona fide agents are persons who are part
of the normal organization of a motor
carrier and perform duties under the
carrier's directions pursuant to a
preexisting agreement which provides for
a continuing relationship, precluding the
exercise of discretion on the part of the
agent in allocating traffic between the
carrier and others.

49 C.F.R. 1045.2 (a) and (b) (1991).

The evidence establishes beyond much doubt that

McGowan was a broker and not an agent. The first paragraph

of the contract states:

1. SERVICES PROVIDED

A. The Sales Corporation shall be

a non-exclusive sales agent for

-10-

the company during the term of

this agreement. Both parties
understand and agree that the

Sales Corporation is an

independent contractor which

provides for the Company the
sales service of generating,
soliciting, and maintaining
customers and accounts and
consulting with the officers
and employees of the Company to
expand the moving traffic and
storage business for the
Company. (Emphasis added.)

Although the language carefully eschews the use of

the word "broker," a "non-exclusive sales agent" who is "an

independent contractor" can only be a broker as defined in

the regulations. McGowan was not part of the normal

organization of Arpin, nor was he an employee. His role was

to arrange for "the transportation of property by an

authorized motor carrier" Arpin. Viewing the language of

the contract in the light of the regulatory definitions of

broker and agents, McGowan was a broker.

The trial record also confirms the district court

finding that McGowan acted as a broker. In addition to its

contract with Arpin, McGowan had contracts with three other

moving companies: Richard Coriell & Company, its subsidiary,

Central Moving Systems, Inc., and Pan-American. During his

testimony, McGowan reaffirmed the following statement made at

his deposition.

I said I don't care what concessions you
get remember one thing these are the
accounts. These accounts are covered

-11-

under contract of McGowan Associates. If
I don't like Paul Arpin's service then
those accounts aren't going to be going
on their trucks.

The district court was clearly correct in ruling that

McGowan was a broker under the ICC statute and regulations

and, as such, was required to be licensed by the ICC.3

Miscellany

McGowan argues that the district court erred by

basing its decision on testimony not in evidence and refusing

to admit the entire deposition transcript of Michael McGowan.

McGowan quotes the following statement in the district court

opinion for his claim that the opinion was based on testimony

not in evidence:

McGowan exercised discretion in
allocating business between the three
haulers that he represented. Although at
trial McGowan adamantly denied having any
such control or influence, McGowan had
previously boasted that if he didn't like
the service that Arpin was providing,
that he wouldn't send accounts to Arpin.
He also had bragged that moves would be
booked through Arpin only if he allowed
them to be.

3 McGowan has devoted over 18 pages of his brief to arguing
that in 1980 Congress exempted household goods agents from
regulation by the ICC and that McGowan did not need a license
because he was a household goods agent. McGowan may be right
about what Congress did in 1980, but since we have found that
McGowan was a broker, not an agent, the argument is
pointless.
We also reject without discussion McGowan's contention that
Arpin should be estopped from avoiding the contract.

-12-

It is true that the last sentence from the excerpt has no

evidentiary foundation. This, however, was harmless error.

As already discussed, there was sufficient evidence without

the "bragging" referenceto establish thatMcGowan was abroker.

We do not think that the district court erred in

refusing to admit McGowan's entire deposition into evidence.

The record shows the following colloquy between the attorneys

and the court prior to and following its exclusion. In

reading the excerpt, it is important to keep in mind that

Galli represented Arpin and that McGowan's attorney was

Gorham.

MR. GALLI: Your Honor, rather than
going through a lot more questions I have
sections of Mr. McGowan's deposition I'd
like to offer into evidence under Rule 32
as an exhibit.
THE COURT: Are they marked?
MR. GALLI: They are marked, your Honor.
What I've done is I've taken each of the
pages and I haven't obliterated
everything, I've just put a yellow mark
down the lines that I would offer into
evidence on each page. There's a yellow
mark on the left showing that lines that
I'd ask to offer into evidence.
THE COURT: Are there any objections?
MR. N. GORHAM: I'd just like to know
what the deposition transcripts are being
offered for?
THE COURT: As evidence.
MR. N. GORHAM: I have no objection.
I don't see the relevancy of it, your
Honor.
THE COURT: The relevance of what? It's
evidence. It's treated just the same as
the witness's oral testimony. How many
pages have I got to read?
MR. GALLI: Your Honor, there are 20,

-13-

25 pages but some of them have only three
or four lines.
THE COURT: Hand it up.
(DEPOSITION TRANSCRIPT HANDED UP TO
COURT)
MR. N. GORHAM: Your Honor, might I
make a suggestion. The whole deposition
should be put in evidence.
THE COURT: I am not going to read the
whole deposition. You're not going to
take my time up with that. I have a lot
of other things to do tonight which is
the only time I get to read these things.
MR. B. GORHAM: Your Honor, could we
have a minute to review this?
THE COURT: You should have seen this
before. Did you give this to them ahead
of time?
MR. GALLI: I just did this this
morning, your Honor.
THE COURT: You don't even give them a
chance to look at it.
MR. GALLI: Well, I'm sorry. I did it
this morning.
THE COURT: I kind of get the feeling
that it's my fault.
MR. GALLI: I'm sorry, your Honor.
THE COURT: You can go without lunch
and read it then, okay. Let's go. What
else do you have?

In the court's final remarks, he told Gorham to

read the marked portions of the deposition during the

luncheon recess. Implicit in this admonition was that the

court would consider admitting any parts that Attorney Gorham

thought contradicted the parts marked by his opponent

Attorney Galli. The record is barren of any future reference

to McGowan's deposition. Neither the entire deposition nor

any portion of it was subsequently offered in evidence. Nor

was it marked for identification.

Fed. Rule Civ. Procedure 32(a)(4) provides:

-14-

If only part of a deposition is offered
in evidence by a party, an adverse party
may require the offeror to introduce any
other part which ought in fairness to be
considered with the part introduced, and
any party may introduce any other parts.

-15-

Fed. Rule of Evid. 106 is to the same effect:

Rule 106. Remainder of or Related
Writings or Recorded Statements
When a writing or recorded statement or
part thereof is introduced by a party, an
adverse party may require the
introduction at that time of any other
part or any other writing or recorded
statement which ought in fairness to be
considered contemporaneously with it.

Attorney Galli offered marked parts of McGowan's

deposition in evidence. The court was ready to receive them.

At that point Attorney Gorham suggested that "the whole

deposition be put in evidence." The court rejected this

suggestion; the judge then suggested that Gorham read the

parts of the deposition that had been marked during the

luncheon recess. Neither attorney did anything further in

regard to the deposition.

We do not think that a district court judge is

obligated to go through the entire deposition of a witness

who had testified at the trial to determine if there are

conflicts in the deposition testimony or if the deposition

contradicts the courtroom testimony of the witness. Under

our adversary system, that is the work of the lawyers. It

was not done here and the judge should not be blamed.

-16-

Finally, McGowan argues that the court erred in

dismissing his counterclaim for interference by Arpin with

his 1987 contract with Richard Coriell & Company.4

We affirm for the reasons given by the district

court in ruling from the bench:

The evidence in the case is that there

was an agreement entered into on December
23rd of 1987 by and between McGowan
Associates Incorporated, hereinafter
referred to as the sales corporation, a
duly organized New Jersey corporation
with a place of business located at 20
Stonehouse Road, Millington, New Jersey,
and Richard Coriell and Company
Incorporated, a duly organized New Jersey
corporation, with a place of business at
the same address. The contention is made
in connection with the counterclaim,
among other things, that the Plaintiff in
this action intentionally and unlawfully
interfered with a contractual
relationship existing between UTS,
McGowan and Coriell. The evidence is
that the agreement, as indicated, at
least insofar as McGowan's interest are
concerned, was between McGowan Associates
Incorporated and Coriell. Since McGowan
Associates Incorporated does not appear
to be a party to this action it seems to
me that under no circumstances could it
recover, under no circumstances could Mr.
McGowan recover, that the only party who
could recover for interference with this
contract are the parties to the contract,
and the party to the contract is McGowan
Associates Incorporated which is not a
party to this litigation.

4 The dismissal of the other two counts of the counterclaim
have not been appealed.

-17-

We have examined the counterclaim carefully. It

specifically names as counter-claimants Universal

Transportation Services, Inc. and Michael J. McGowan. It

does state that Michael McGowan is doing business as McGowan

Associates, Inc. Individuals, however, do not usually do

business in the name of an incorporated entity. As the

district court pointed out, the contract which was allegedly

interfered with by Arpin was between McGowan Associates, Inc.

and Coriell; it was not between McGowan d/b/a McGowan

Associates and Coriell. There can be no question that

McGowan Associates, Inc. is not a party to this litigation.

McGowan argues, in effect, that we should disregard

the separate corporate entity and treat him as the real party

in interest. We do not think that we should pierce the

corporate veil at the behest of the individual who fashioned

it so as to further the individual's personal interests.

That would make a nullity of the purpose and use of corporate

structures. Nor can we ignore pleadings drawn by those who

knew or should have known of the specific corporate entity

that executed the contract in issue. To do so would

constitute a judicial amendment to the pleadings after the

trial was over.

The judgement of the district court is affirmed.

Costs on appeal awarded to Arpin.
Costs on appeal awarded to Arpin.

-18-