USCA1 Opinion

 

 March 19, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1779 PAUL ARPIN VAN LINES, INC., Plaintiff, Appellee, v. UNIVERSAL TRANSPORTATION SERVICES, INC. a/k/a UNIVERSAL TRANSPORTATION SERVICES LIMITED, ET AL. Defendants, Appellants. ______________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Frances J. Boyle, U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ Cyr, Circuit Judge. _____________ ____________________ Nicholas Gorham, with whom Edmund L. Alves, Jr., and Gorham _______________ _____________________ ______ and Gorham were on brief, for appellant. __________ Richard G. Galli, with whom Barbara Harris and Richard Galli ________________ ______________ _____________ & Associates Incorporated were on brief, for appellee. _________________________ ____________________ March 19, 1993 ____________________ BOWNES, Senior Circuit Judge. On October 12, 1989, BOWNES, Senior Circuit Judge. ____________________ Universal Transportation Services, Inc., entered into a contract with Paul Arpin Van Lines, Inc. Arpin is primarily in the business of moving and storing household goods and furniture. Universal is in the business of soliciting customers and accounts for moving and storage companies. The contract had a term of three years, with a provision for year-to-year extensions after the three-year term had expired. On November 8, 1990, Arpin notified Universal that it was terminating the contract. After Universal refused to accede to pre-term cancellation, Arpin, on May 3, 1991, filed a declaratory judgment action in the district court of Rhode Island, seeking a judgment that: (a) the contract is "canceled, rescinded or . . . null and void for illegality"; (b) that the contract is "illegal, unlawful and unenforceable." Universal duly answered, denying that there was any legal basis for terminating the contract. Universal also brought a counterclaim on its own behalf and on behalf of McGowan Associates, Inc. The counterclaim states that Michael J. McGowan is the principal shareholder and president of Universal and McGowan Associates, Inc. The counterclaim alleged three counts: Count I sought damages of $300,000 for Arpin's attempt to cancel the contract prior to its -2- termination date; Count II alleged violations of restrictive covenants in the contract and claimed damages of $300,000; Count III alleged interference by Arpin with a contractual relationship between another moving company, Richard J. Coriell & Co., Inc., and both Universal and McGowan Associates, Inc.; damages of $300,000 were claimed. The case was tried, jury-waived, before the District Court of Rhode Island. The district court found that McGowan and the business entities he controlled were "brokers" and as such were required to be licensed by the Interstate Commerce Commission pursuant to 49 U.S.C. 10921.1 It is undisputed that neither McGowan, Universal, nor McGowan Associates were licensed by the ICC. The court therefore held that the contract was illegal. It found that Universal was not entitled to commissions it might have earned over the remaining two-year term of the contract. The court, however, held that Universal was entitled to collect the commissions it had earned during the time the contract was in effect. It found that Universal was entitled to "$3,231.05 of restitution for unreported and unpaid commissions and $7,891.27 of restitution for reported, but unpaid, commissions." Thedistrictcourt alsodismissed thecounterclaim. ____________________ 1 49 U.S.C. 10921 provides in pertinent part that a person may be a broker for motor carriers, "only if the person holds the appropriate certificate, permit or license issued under this chapter authorizing the transportation or service." -3- Appellants, Universal and McGowan Associates, dispute the district court's holding that they were not entitled to the commissions they would have earned over the unexpired term of the contract. They have not appealed the district court's computation of the commissions due them for business generated during the time the contract was in effect. The appellee, Arpin, has not appealed the award of commissions. The root issue on appeal, therefore, is whether appellants can recover, as damages, the commissions they would have earned if the contract had remained in effect for its three-year term. We hold they cannot. The Enforceability of the Contract The Enforceability of the Contract __________________________________ Appellants argue first that the contract should have been enforced regardless of whether McGowan2 was an unlicensed broker. We note first that the contract here was not intrinsically illegal; it was not a criminal conspiracy or one whose purpose directly violated the prohibition of a statute. The question is whether the contract is unenforceable because McGowan did not have a broker's license from the ICC, as required by 49 U.S.C. 10921. The general rule is that an otherwise valid contract that results in the violation of a public-protection statute or regulation is unenforceable. Resolution Trust Corp. v. Home Sav. of Am., _______________________ _________________ ____________________ 2 We follow the lead of the parties and refer to defendants appellants as McGowan. -4- 946 F.2d 93, 96 (8th Cir. 1991); Securities Industry Ass'n. ___________________________ v. Connolly, 883 F.2d 1114, 1123 n.7 (1st Cir. 1989), cert. ________ _____ denied, 496 U.S. 956 (1990); Shinberg v. Bruk, 875 F.2d 973 ______ ________ ____ (1st Cir. 1989); Smithy Braedon Co. v. Hadid, 825 F.2d 787, ___________________ _____ 790 (4th Cir. 1987); 6A Arthur Lynton Corbin, Corbin on Contracts, 1512, p. 711 (1962). See Restatement (Second) ___ of Contracts 2d 181 (1981). This general rule, however, is almost as much honored in the breach as in the observance. The Seventh Circuit has pointed out that "the defense of illegality, being in character if not origins an equitable and remedial doctrine, is not automatic but requires . . . a comparison of the pros and cons of enforcement." Northern Indiana Pub. ______________________ Serv. Co. v. Carbon County Coal Co., 799 F.2d 265, 273 (7th _________ ______________________ Cir. 1986). In that case the court held the contract was enforceable, id.; it also noted that the statute violated was ___ "an anachronism a regulatory statute on which the sun set long ago." Id. at 274. In Resolution Trust the court ___ _________________ observed: Some federal courts have applied this less-than-absolute rule and have refused to enforce illegal contracts only if the statute or regulation explicitly provides that contracts in violation are void, or if the interest in enforcement clearly outweighs the public policy against enforcement. 946 F.2d at 96-97 (footnote and citations omitted). The court held that the case before it was not one in which the -5- interest in contract enforcement clearly outweighed the public policy against enforcement and held the contract "illegal and therefore unenforceable." Id. ___ McGowan relies on two Supreme Court cases in arguing for enforcement of the contract. In Bruce's Juices ______________ v. American Can Co., 330 U.S. 743 (1947), the Court held that ________________ it was no defense to a suit for collection of notes that the seller had engaged in price discriminations against the buyer violating the Robinson-Patman Act. The Act prescribed criminal penalties and entitled injured persons to treble damages, but did not specifically render the sales, for which the notes were given, illegal or the purchase price uncollectible. During the course of its opinion, the Court stated: But when the contract sued upon is not intrinsically illegal, the Court has refused to allow property to be obtained under a contract of sale without enforcing the duty to pay for it because of violations of the Sherman Act not inhering in the particular contract in suit and has reaffirmed the "doctrine that 'where a statute creates a new offense and denounces the penalty, or gives a new right and declares the remedy, the punishment or the remedy can be only that which the statute prescribes.'" D.R. Wilder Mfg. Co. v. ______________________ Corn Products Refining Co., 236 U.S. 165, ___________________________ 174-175; Connolly v. Union Sewer Pipe ________ _________________ Co., 184 U.S. 540. ___ Id. at 755. In Kelly v. Kosuga, 358 U.S. 516 (1959), the ___ _____ ______ Court upheld the right of a seller to recover from the buyer -6- the unpaid balance due on a lawful sale even though the sale was made pursuant to an agreement which violated 1 of the Sherman Act. The Court noted: As a defense to an action based on contract, the plea of illegality based on violation of the Sherman Act has not met with much favor in this Court. Id. at ___ 518 (footnote omitted). We think that the precedential value of these holdings has been limited by two subsequent Supreme Court cases. In United States v. Mississippi Valley Co., 364 U.S. _____________ ______________________ 520 (1961), the Court held that the activities of a consultant retained by the government violated a statute prohibiting one retained by the government from engaging in activities constituting a conflict of interest. It held that this alone precluded the respondent from enforcing his consulting contract with the government. Id. at 525. The ___ Court noted that the conflict-of-interest statute did not "specifically provide for the invalidation of contracts which are made in violation of the statutory prohibition." Nevertheless, the Court held that the consulting contract could not be enforced. It stated: Were we to decree the enforcement of such a contract, we would be affirmatively sanctioning the type of infected bargain which the statute outlaws and we would be depriving the public of the protection which Congress has conferred. Id. at 563. In Kaiser Steel Corp. v. Mullins, 455 U.S. 72 ___ ___________________ _______ (1982), the issue was -7- whether a coal producer, when it is sued on its promise to contribute to union welfare funds based on its purchases of coal from producers not under contract with the union, is entitled to plead and have adjudicated a defense that the promise is illegal under the antitrust and labor laws. Id. at 74. The Court held that the coal producer was ___ entitled to so plead. At the start of its analysis the Court stated: There is no statutory code of federal contract law, but our cases leave no doubt that illegal promises will not be enforced in cases controlled by the federal law. Id. at 77. The Court discussed Kelly v. Kosuga, supra, at ___ _____ ______ _____ length and found that Kosuga "contemplated that the defense ______ of illegality would be entertained in a case such as this." Id. at 82. ___ We hold that under the facts of this case the contract between the parties was unenforceable as to the remaining two-year term, during which time McGowan performed no services for Arpin. As the district court pointed out, the ICC broker requirement was enacted to protect the public from fraud and/or incompetent motor carrier brokers. Although there is no indication that McGowan was either fraudulent or incompetent, his failure to obtain a broker's license cannot be ignored or forgiven. There is no point in speculating why McGowan did not obtain a license. The record evinces that he had worked in the field of transportation of -8- household goods for many years. It can, therefore, be fairly inferred that McGowan knew of the ICC broker's licensing requirement. There was also record evidence from which it could be found that McGowan, in answer to a direct question, stated he had an ICC broker's license. This was a knowing misrepresentation, even though it was not made directly to Arpin. Viewing the facts in light of the applicable case law, we find that it would subvert the public-protection policy of the statute to enforce the unexpired and not performed term of the contract. Broker or Agent Broker or Agent _______________ The district court held that McGowan was a broker, not a household goods agent, and as such had to be licensed by the ICC. Appellants argue that this was error. We agree with the district court. The starting point is 49 U.S.C. 10921 which provides: Requirement for certificate, permit, or Requirement for certificate, permit, or license license Except as provided in this subchapter or another law, a person may provide transportation or service subject to the jurisdiction of the Interstate Commerce Commission under subchapter II, III, or IV of chapter 105 of this title or be a broker for transportation subject to the jurisdiction of the Commission under subchapter II of that chapter, only if the person holds the appropriate certificate, permit, or license issued under this subchapter authorizing the transportation or service. A broker is defined as a person, -9- other than a motor carrier or employee or _________________________________________ agent of a motor carrier, that as a ___________________________ principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing or arranging for, transportation by motor carrier for compensation. 49 U.S.C. 10102(1) (emphasis added). The distinction between agent and broker, inherent in the statute, is made explicit in the regulations: Broker means a person who, for compensation, arranges, or offers to arrange, the transportation of property by an authorized motor carrier. Motor carriers, or persons who are employees or bona fide agents of carriers, are not brokers within the meaning of this section when they arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport. Bona fide agents are persons who are part of the normal organization of a motor carrier and perform duties under the carrier's directions pursuant to a preexisting agreement which provides for a continuing relationship, precluding the exercise of discretion on the part of the agent in allocating traffic between the carrier and others. 49 C.F.R. 1045.2 (a) and (b) (1991). The evidence establishes beyond much doubt that McGowan was a broker and not an agent. The first paragraph of the contract states: 1. SERVICES PROVIDED 1. SERVICES PROVIDED A. The Sales Corporation shall be _______________________________ a non-exclusive sales agent for _______________________________ -10- the company during the term of ___________ this agreement. Both parties understand and agree that the ___ Sales Corporation is an _______________________________ independent contractor which ________________________ provides for the Company the sales service of generating, soliciting, and maintaining customers and accounts and consulting with the officers and employees of the Company to expand the moving traffic and storage business for the Company. (Emphasis added.) Although the language carefully eschews the use of the word "broker," a "non-exclusive sales agent" who is "an independent contractor" can only be a broker as defined in the regulations. McGowan was not part of the normal organization of Arpin, nor was he an employee. His role was to arrange for "the transportation of property by an authorized motor carrier" Arpin. Viewing the language of the contract in the light of the regulatory definitions of broker and agents, McGowan was a broker. The trial record also confirms the district court finding that McGowan acted as a broker. In addition to its contract with Arpin, McGowan had contracts with three other moving companies: Richard Coriell & Company, its subsidiary, Central Moving Systems, Inc., and Pan-American. During his testimony, McGowan reaffirmed the following statement made at his deposition. I said I don't care what concessions you get remember one thing these are the accounts. These accounts are covered -11- under contract of McGowan Associates. If I don't like Paul Arpin's service then those accounts aren't going to be going on their trucks. The district court was clearly correct in ruling that McGowan was a broker under the ICC statute and regulations and, as such, was required to be licensed by the ICC.3 Miscellany Miscellany __________ McGowan argues that the district court erred by basing its decision on testimony not in evidence and refusing to admit the entire deposition transcript of Michael McGowan. McGowan quotes the following statement in the district court opinion for his claim that the opinion was based on testimony not in evidence: McGowan exercised discretion in allocating business between the three haulers that he represented. Although at trial McGowan adamantly denied having any such control or influence, McGowan had previously boasted that if he didn't like the service that Arpin was providing, that he wouldn't send accounts to Arpin. He also had bragged that moves would be booked through Arpin only if he allowed them to be. ____________________ 3 McGowan has devoted over 18 pages of his brief to arguing that in 1980 Congress exempted household goods agents from regulation by the ICC and that McGowan did not need a license because he was a household goods agent. McGowan may be right about what Congress did in 1980, but since we have found that McGowan was a broker, not an agent, the argument is pointless. We also reject without discussion McGowan's contention that Arpin should be estopped from avoiding the contract. -12- It is true that the last sentence from the excerpt has no evidentiary foundation. This, however, was harmless error. As already discussed, there was sufficient evidence without the "bragging" referenceto establish thatMcGowan was abroker. We do not think that the district court erred in refusing to admit McGowan's entire deposition into evidence. The record shows the following colloquy between the attorneys and the court prior to and following its exclusion. In reading the excerpt, it is important to keep in mind that Galli represented Arpin and that McGowan's attorney was Gorham. MR. GALLI: Your Honor, rather than going through a lot more questions I have sections of Mr. McGowan's deposition I'd like to offer into evidence under Rule 32 as an exhibit. THE COURT: Are they marked? MR. GALLI: They are marked, your Honor. What I've done is I've taken each of the pages and I haven't obliterated everything, I've just put a yellow mark down the lines that I would offer into evidence on each page. There's a yellow mark on the left showing that lines that I'd ask to offer into evidence. THE COURT: Are there any objections? MR. N. GORHAM: I'd just like to know what the deposition transcripts are being offered for? THE COURT: As evidence. MR. N. GORHAM: I have no objection. I don't see the relevancy of it, your Honor. THE COURT: The relevance of what? It's evidence. It's treated just the same as the witness's oral testimony. How many pages have I got to read? MR. GALLI: Your Honor, there are 20, -13- 25 pages but some of them have only three or four lines. THE COURT: Hand it up. (DEPOSITION TRANSCRIPT HANDED UP TO COURT) MR. N. GORHAM: Your Honor, might I make a suggestion. The whole deposition should be put in evidence. THE COURT: I am not going to read the whole deposition. You're not going to take my time up with that. I have a lot of other things to do tonight which is the only time I get to read these things. MR. B. GORHAM: Your Honor, could we have a minute to review this? THE COURT: You should have seen this before. Did you give this to them ahead of time? MR. GALLI: I just did this this morning, your Honor. THE COURT: You don't even give them a chance to look at it. MR. GALLI: Well, I'm sorry. I did it this morning. THE COURT: I kind of get the feeling that it's my fault. MR. GALLI: I'm sorry, your Honor. THE COURT: You can go without lunch and read it then, okay. Let's go. What else do you have? In the court's final remarks, he told Gorham to read the marked portions of the deposition during the luncheon recess. Implicit in this admonition was that the court would consider admitting any parts that Attorney Gorham thought contradicted the parts marked by his opponent Attorney Galli. The record is barren of any future reference to McGowan's deposition. Neither the entire deposition nor any portion of it was subsequently offered in evidence. Nor was it marked for identification. Fed. Rule Civ. Procedure 32(a)(4) provides: -14- If only part of a deposition is offered in evidence by a party, an adverse party may require the offeror to introduce any other part which ought in fairness to be considered with the part introduced, and any party may introduce any other parts. -15- Fed. Rule of Evid. 106 is to the same effect: Rule 106. Remainder of or Related Rule 106. Remainder of or Related Writings or Recorded Statements Writings or Recorded Statements When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it. Attorney Galli offered marked parts of McGowan's deposition in evidence. The court was ready to receive them. At that point Attorney Gorham suggested that "the whole deposition be put in evidence." The court rejected this suggestion; the judge then suggested that Gorham read the parts of the deposition that had been marked during the luncheon recess. Neither attorney did anything further in regard to the deposition. We do not think that a district court judge is obligated to go through the entire deposition of a witness who had testified at the trial to determine if there are conflicts in the deposition testimony or if the deposition contradicts the courtroom testimony of the witness. Under our adversary system, that is the work of the lawyers. It was not done here and the judge should not be blamed. -16- Finally, McGowan argues that the court erred in dismissing his counterclaim for interference by Arpin with his 1987 contract with Richard Coriell & Company.4 We affirm for the reasons given by the district court in ruling from the bench: The evidence in the case is that there was an agreement entered into on December 23rd of 1987 by and between McGowan Associates Incorporated, hereinafter referred to as the sales corporation, a duly organized New Jersey corporation with a place of business located at 20 Stonehouse Road, Millington, New Jersey, and Richard Coriell and Company Incorporated, a duly organized New Jersey corporation, with a place of business at the same address. The contention is made in connection with the counterclaim, among other things, that the Plaintiff in this action intentionally and unlawfully interfered with a contractual relationship existing between UTS, McGowan and Coriell. The evidence is that the agreement, as indicated, at least insofar as McGowan's interest are concerned, was between McGowan Associates Incorporated and Coriell. Since McGowan Associates Incorporated does not appear to be a party to this action it seems to me that under no circumstances could it recover, under no circumstances could Mr. McGowan recover, that the only party who could recover for interference with this contract are the parties to the contract, and the party to the contract is McGowan Associates Incorporated which is not a party to this litigation. ____________________ 4 The dismissal of the other two counts of the counterclaim have not been appealed. -17- We have examined the counterclaim carefully. It specifically names as counter-claimants Universal Transportation Services, Inc. and Michael J. McGowan. It does state that Michael McGowan is doing business as McGowan Associates, Inc. Individuals, however, do not usually do business in the name of an incorporated entity. As the district court pointed out, the contract which was allegedly interfered with by Arpin was between McGowan Associates, Inc. and Coriell; it was not between McGowan d/b/a McGowan Associates and Coriell. There can be no question that McGowan Associates, Inc. is not a party to this litigation. McGowan argues, in effect, that we should disregard the separate corporate entity and treat him as the real party in interest. We do not think that we should pierce the corporate veil at the behest of the individual who fashioned it so as to further the individual's personal interests. That would make a nullity of the purpose and use of corporate structures. Nor can we ignore pleadings drawn by those who knew or should have known of the specific corporate entity that executed the contract in issue. To do so would constitute a judicial amendment to the pleadings after the trial was over. The judgement of the district court is affirmed. The judgement of the district court is affirmed. ________________________________________________ Costs on appeal awarded to Arpin. Costs on appeal awarded to Arpin. _________________________________ -18-