A. Kenneth **HAWKES**,
Plaintiff-Appellee,

v.

**INTERNAL REVENUE SERVICE**,
Defendant-Appellant.

No. 74–1190.

United States Court of Appeals,
Sixth Circuit.

Dec. 23, 1974.

Thomas F. Turley, Jr., U. S. Atty., Memphis, Tenn., Scott P. Crampton, Meyer Rothwacks, Bennet N. Hollander, Jane Edmisten, App. Section, Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant.

B. C. Clifton, Memphis, Tenn., for plaintiff-appellee.

Before WEICK, CELEBREZZE and MILLER, Circuit Judges.

CELEBREZZE, Circuit Judge.

This appeal involves the validity of an order requiring the Internal Revenue Service to disclose various documents, including portions of the 1970 Internal Revenue Manual and Supplement and the Return Classifier's Handbook.

This is the second time the case has been before this Court. On September 25, 1972, we reversed the District Court's dismissal of Appellee's complaint, which had been brought under the Freedom of Information Act, 5 U.S.C. § 552 (1967). After a full discussion of the legislative purpose behind the Act, we remanded for an *in camera* examination of the requested documents in light of our opinion. Hawkes v. Internal Revenue Service, 467 F.2d 787 (6th Cir. 1972).

After remand but before further proceedings in the District Court, Appellant I.R.S. furnished Appellee with a substantial part of the requested materials. Following an *in camera* inspection of the disputed documents, the District Court held that "the disclosure of none of these materials would have the sole effect of enabling law violators to escape detection." Hawkes v. Internal Revenue Service, Civil No. C–70–409 (W.D.Tenn., filed Nov. 5, 1973). The District Court expressed "some doubt" whether materials "having to do with the selection of returns for audit" should be disclosed, but concluded that "even here in view of the complication of the directions and the checks and balances contained therein, we do not believe that knowledge of this would be of any substantial aid to a fraudulent taxpayer in avoiding detection." Accordingly, the District Court ordered all the requested materials made available to Appellee, but it sealed the documents pending the outcome of this appeal.

After briefs were filed on appeal, the I.R.S. disclosed further substantial portions of the requested materials. The Service maintains at this time that approximately 70 paragraphs "are considered critical" and should not be disclosed. In general, these paragraphs concern the selection of returns for audit, based on specific amounts claimed under various categories. Their disclosure, the I.R.S. maintains, would substantially impede its enforcement program. The question before us is whether the District Court erred in ordering disclosure of the 70 disputed paragraphs. The remaining passages have already been provided to Appellee, and their disclosure is not before us for review.

In deciding whether the District Court properly followed our directions on remand, we consider whether it properly interpreted our mandate, whether it fully carried out required procedures, and whether its factual findings were clearly erroneous.[1]

---

1. Except for the intervention of new statutory or Supreme Court decisional law, our mandate to the District Court and the accompanying opinion constitute "the law of this case," and we will not review the correctness of our prior decision. Hildreth v. Union News Co., 315 F.2d 548, 550 (6th Cir. 1963).

After oral argument, amendments to the Freedom of Information Act were passed, over a presidential veto. These amendments

Appellant argues that the District Court erroneously interpreted our mandate by adopting a much narrower view of what materials may be withheld than warranted by our opinion on remand. It argues that the District Court's standard, "that all materials be supplied . . . unless the sole effect of disclosure would be to enable law violators to escape detection," ignores the broader sweep in favor of secrecy which Appellant says we gave to the Act. Specifically, the I.R.S. points to our statement that there is a bar to the "disclosure of information which, if known to the public, would significantly impede the [law] enforcement process." (Emphasis in original) 467 F.2d at 795. The I.R.S. urges that the "sole effect" criterion is stricter than the "significantly impede" criterion and that the latter view should prevail.

■ We find no conflict between the District Court's interpretation of the Act and ours. Indeed, the "sole effect" language was taken directly from our opinion:

The exception for law enforcement materials contained in (a)(2)(C) is, as suggested above, a very narrow one and is to be applied only where the sole effect of disclosure would be to enable law violators to escape detection.

. . . [D]oubts as to the meaning of this subsection should be resolved in favor of disclosure. 467 F.2d at 795–796.

Furthermore, the District Court applied the "significantly impede" criterion in considering whether to order disclosure of the materials involving the selection of returns for audit. It stated that it did not believe that disclosure "would be of any substantial aid to a fraudulent taxpayer in avoiding detection." If disclosure would be of no substantial aid to law violators, necessarily it would not "significantly impede" the enforcement process. We conclude that the District Court properly interpreted our mandate.

■ Although the I.R.S. faults the District Court's frank expression of doubt as to whether the materials involving selection of returns for audit should be disclosed and its "confession" that the bureaucratic jargon in the materials made them "very difficult to understand," there is no indication that the District Court failed to scrutinize the materials with care. We find that the District Court fully complied with the procedures we mandated.

■ The basic issue, thus, is whether the District Court's conclusion was clearly erroneous that disclosure of the disputed 70 paragraphs would not have the "sole effect of enabling law violators to escape detection" and would not substantially aid a fraudulent taxpayer.[2] The "clearly erroneous" standard applies even though the only evidence is documentary, i. e., the materials sought and affidavits of two I.R.S. officials. Schna-

extended the scope of disclosure and do not affect the validity of our prior holding. Neither § (a)(2)(C) nor § (b)(2) of 5 U.S.C. § 552 was changed. See n. 5, infra.

Although Appellant invites us to reassess our views on subsection (b)(2)'s exemption in light of Environmental Protection Agency v. Mink, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973), we find no indication in that opinion that our analysis was faulty. Furthermore, the 1974 amendments to the Act "clarifie[d] Congressional intent to override the Supreme Court's holding in . . . Mink . . . with respect to in camera review of classified documents." Joint Explanatory Statement of Conference Committee, 120 Cong.Rec. H9528 (Sept. 25, 1974).

Appellant also asks that we defer decision until the Supreme Court has decided the case of National Labor Relations Board v. Sears, Roebuck & Co., 156 U.S.App.D.C. 303, 480

F.2d 1195 (1973), cert. granted, 417 U.S. 907, 94 S.Ct. 2602, 41 L.Ed.2d 211 (1974). The Sears case involves very different materials from those sought here. The probability of delay pending the Supreme Court's decision and the distinguishing features of Sears warrant a refusal to delay decision of this appeal. Indeed, since our decision on remand, the Fifth Circuit has adopted our analysis of both § (a)(2)(C) and § (b)(2) of the Act, in ordering disclosure of materials used by inspectors of the Occupational Safety and Health Administration. Stokes v. Brennan, 476 F.2d 699 (5th Cir. 1973).

2. See Grumman Aircraft Engineering Corp. v. Renegotiation Board, 157 U.S.App.D.C. 121, 482 F.2d 710, 712 (1973), applying the "clearly erroneous" standard to the review of a district court's order after remand.

dig Corp. v. Gaines Mfg. Co., Inc., 494 F.2d 383, 388 (6th Cir. 1974); H. K. Porter Co. v. Goodyear Tire & Rubber Co., 437 F.2d 244, 246 (6th Cir. 1971). In order for us to reverse the District Court, we must be "left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948), quoted in Parmer v. National Cash Register Co., 503 F.2d 275 (6th Cir. 1974).

We have reviewed each of the remaining disputed paragraphs, in order to decide whether it is clear that their disclosure would significantly impede enforcement of the revenue laws or would have the sole effect of enabling violators to escape detection. We have concluded that the District Court's conclusion was not clearly erroneous as to any of the paragraphs.

■ Generally, the disputed materials constitute guidelines which I.R.S. agents are to follow in determining which tax returns should be audited and which items on a return deserve special scrutiny.[3] For example, one paragraph which has been made public, § 6.051 of the Return Classifier's Handbook, states, "Exhibit E . . . lists the average ratio of officers' salaries to gross income in various types of businesses." The I.R.S. seeks continued secrecy of Exhibit E, presumably on the ground that knowledge of the table's specific ratios would encourage corporations not to report salaries in excess of the averages, with the hope of avoiding an audit concerning the reasonableness of their deductions for officers' salaries. The already disclosed portion of § 6.051 states, however, "The Table is not to be used as an inflexible measure of the reasonableness of compensation, but rather as a guide for testing the reasonableness of the deduction. What constitutes reason-

able compensation depends upon the facts in each case."

We agree with the District Court that disclosure of the ratios specified in Exhibit E would not significantly hamper enforcement activities. In fact, this information falls within a category discussed in our remand opinion:

Information which merely enables an individual to conform his actions to an agency's understanding of the law applied by that agency does not impede law enforcement and is not excluded from compulsory disclosure under (a)(2)(c).

Far from impeding the goals of law enforcement, in fact, the disclosure of information clarifying an agency's substantive or procedural law serves the very goals of enforcement by encouraging knowledgeable and voluntary compliance with the law. 467 F.2d at 795.

Disclosure of Exhibit E would give the public a rough notion of what salaries may be unreasonable for corporate deduction purposes, in the view of the enforcing agency—the I.R.S. The sole effect of disclosure of this information would not be easier evasion of the tax laws. Rather, companies taking unreasonable deductions would be encouraged to reduce their officers' salaries to within the ranges specified in Exhibit E, and companies wishing substantially to exceed the average range would be on notice that proof of the reasonableness of the higher salary deductions would probably be required by an I.R.S. auditor.

■ We observe, furthermore, that many of the paragraphs which the I.R.S. seeks to withhold are effectively indistinguishable from items which have been disclosed.[4] Appellant's decision to make most of the requested material public before the hearing on appeal does not, of course, waive any rights to which the

3. Because Appellant may wish to appeal our decision, we will not quote disputed sections in this opinion but will discuss them in general terms.

4. Without discussing specific examples, we note that some of the disclosed material instructs agents to be suspicious of particular claims under specific Code sections. Some of the remaining undisputed paragraphs use nearly identical language to urge attention to other deductions and amounts reported on returns.

I.R.S. was entitled after the District Court's decision. Our observation is simply that many of the paragraphs remaining in dispute are not very different from information which is already available to the public.

Upon a careful review of the remaining disputed paragraphs, we are not convinced that the District Court was mistaken in concluding that their disclosure would be of no substantial aid to a fraudulent taxpayer wishing to avoid detection. None of the disputed paragraphs state that an audit will be completely avoided if a return has certain characteristics. As is generally known, a certain percentage of every type of return is audited. A fraudulent return *always* runs the risk of being discovered, and disclosure of the disputed passages will not change that fact.

We recognize Appellant's sincere belief that its enforcement activities will be inconvenienced by the District Court's disclosure order. It was Congress which painted the Information Act with a broad brush, however, and it is Congress to which Appellant's appeal must ultimately be addressed. It is a legislative function to strike the balance between the government's right to withhold information and the public's right to know. Efforts to reduce the broad sweep of disclosure which Congress intended by enacting 5 U.S.C. § 552 must be taken to the legislature, not to the courts.[5]

The judgment of the District Court is affirmed. In order to protect Appellant's right to seek Supreme Court review of our holding, it is ordered that the disputed materials be kept under seal. If Appellant does not file a timely petition for a writ of certiorari in the Supreme Court, the Clerk will return the sealed material to the District Court, with direction that it be delivered to counsel for Appellee.

**5.** We note that Congress recently passed amendments to the Act which have further broadened the scope of disclosure. H.R. 12471, 93d Cong., 2d Sess. (1974), motion to override veto passed (House of Representatives) Nov. 20, 1974, (Senate) Nov. 21, 1974. The Act is found at 120 Cong.Rec. H9525–27 (Sept. 25, 1974).