NEWSPAPER DRIVERS & HANDLERS LOCAL # 372, A/W INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

The Oakland Press Company, Intervenor.

No. 83–5311.

United States Court of Appeals, Sixth Circuit.

Argued April 13, 1984.

Decided May 31, 1984.

Rehearing and Rehearing En Banc Denied Aug. 15, 1984.

Gerry M. Miller (argued), Goldberg, Previant, Uelmen, Gratz, Miller & Brueggeman, Milwaukee, Wis., for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, Rhonda G. Williford (argued), N.L.R.B., for respondent.

L. Michael Zinser (argued), King, Ballow & Little, Nashville, Tenn., for intervenor.

Before MARTIN and KRUPANSKY, Circuit Judges, and REED, District Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

The only remaining issue in this case, which has been before this court on two previous occasions, see 606 F.2d 689 (6th Cir.1979), and 682 F.2d 116 (6th Cir.1982), is whether an employer can be equitably estopped from claiming that workers previously recognized as "employees" under section 2(3) of the National Labor Relations Act are actually supervisors and thus not protected by the Act.

Newspaper Drivers and Handlers, Local Union No. 372 represents 15 district managers who work for the *Oakland Press*, a suburban Detroit newspaper. These district managers are responsible for overseeing the paper's delivery operations. Each manager supervises about 90 newspaper carriers who are responsible for the actual delivery of the paper to a subscriber's doorstep. The average carrier is 12 years old, has about 50 subscribers, earns about two dollars a day, and lasts about 6–12 months on the job. About 35 of the 1,250 carriers are adults who cover suburban car routes.

Beginning in 1970, the newspaper recognized the district managers as employees under section 2(3) of the Act. At that time, the paper characterized the carriers as independent contractors for the district managers. The paper recognized the union as the bargaining agent for the district managers after it won a representation election in 1971. However, in 1976, when the current bargaining agreement was about to expire, the newspaper reversed its position and refused to bargain with the union, claiming that the district managers were actually supervisors and, as such, not entitled to protection under the Act. *See* 29 U.S.C. § 164(a). The union then filed an unfair labor practice charge with the Board.

In the original proceedings before the Board, the administrative law judge found that the newspaper carriers were not really independent contractors but were not employees of the newspaper either. Because the carriers were not employees, it followed that the district managers were not supervisors and so could form a bargaining unit that the newspaper must recognize. The Board adopted the administrative law judge's findings *in toto*. 229 N.L.R.B. 77 (1977). On appeal, this Court remanded the case to the Board for an express determination on the status of the newspaper carriers. *Oakland Press Co. v. NLRB*, 606 F.2d 689 (6th Cir.1979).

On remand, the Board reversed itself and its longstanding policy, see *Newsday, Inc.*, 171 N.L.R.B. 1451 (1968), and found that the newspaper carriers were employees within the meaning of section 2(3) of the Act and, therefore, that the district managers were supervisors not entitled to the protections of the Act. 249 N.L.R.B. 1081 (1980). On appeal to this Court, we affirmed the Board's determination that the carriers were employees and the managers supervisors,** but remanded once again, this time on the narrow issue of whether the newspaper was equitably estopped

---

* Honorable Scott Reed, United States District Judge for the Eastern District of Kentucky, sitting by designation.

** The law of the case requires that we accept the Board's determination that the newspaper carriers are employees. *See, e.g., Hawkes v. Internal Revenue Service*, 507 F.2d 481, 481 n. 1 (6th Cir.1974). Nonetheless, we feel compelled to note our disagreement with this decision. It is difficult to imagine that 12-year-old children, working five hours a week for two dollars an hour, are the type of people to whom Congress intended to extend the protections of the National Labor Relations Act. It is even more difficult to imagine that such a group would, or even should, ever organize. To us, these children are much like the sheltered workshop people in *Key Opportunities, Inc.*, 265 N.L.R.B. No. 178 (1982), and the part-time student janitors in *San Francisco Art Institute*, 226 N.L.R.B. 1251 (1971), whom the Board has already determined are not employees for purposes of the Act. The only practical effect of this decision is to exclude from the Act a group of employees whom Congress surely intended would be covered by it.

from claiming that the district managers were supervisors. *Newspaper Drivers & Handlers, Local Union No. 372 v. NLRB*, 682 F.2d 116 (6th Cir.1982). On remand, the Board found that equitable estoppel did not lie in this case because invoking the doctrine would contravene the basic policies of the Act. Moreover, even assuming that estoppel could lie, the Board found that the elements necessary to activate the doctrine were not present in this case. 266 N.L.R.B. 26 (1983). The union now petitions for review of this order and the Board cross-applies for its enforcement.

 "Congress intended recognition of supervisors by employers for bargaining purposes [to] be completely voluntary." *District 2, Marine Engineers Beneficial Ass'n v. Amoco Oil*, 554 F.2d 774, 778 n. 5 (6th Cir.1977). *See also Hanna Mining Co. v. District 2, Marine Engineers Beneficial Ass'n*, 382 U.S. 181, 189, 86 S.Ct. 327, 331, 15 L.Ed.2d 254 (1965). The purpose of this rule was to ensure "that no one, whether employer or employee, need have as his agent [i.e., supervisor] one who is obligated to those on the other side, or one whom, for any reason, he does not trust." H.Rep. No. 245, 80th Cong., 1st Sess. 17 (1947). This being the case, the only question for us is whether an employer's freedom of choice in this matter can be curtailed by prior conduct, *i.e.*, by the doctrine of equitable estoppel. The Board argues that it cannot. We must agree. In earlier cases, the Board has recognized the right of a company to challenge "employee status" of workers who have long been a part of recognized bargaining units, even when the duties of those workers remain unchanged. *See, e.g., The Washington Post Co.*, 254 N.L.R.B. 168, 168–69 (1981); *Brotherhood of Locomotive Firemen & Engineers*, 145 N.L.R.B. 1521, 1525 n. 10 (1964). Under these decisions, prior conduct of an employer is significant evidence as to the proper classification of employees, but it is not determinative. *Washington Post, supra*, at 169. While these prior decisions of the Board are not controlling on us, they do lend considerable support to the Board's position.

\* See 741 F.2d 882.

Moreover, applying collateral estoppel in this area would frustrate a fundamental purpose of the Act, namely not requiring employers to bargain collectively with workers also connected with management. *See* 29 U.S.C. § 164(a) ("no employer subject to this Act shall be compelled to deem individuals defined herein as supervisors as employees for the purpose of any law ... relating to collective bargaining"). Such frustration of purpose cannot be allowed. In the related doctrine of waiver, the Supreme Court has recognized that waiver is not possible when it would result in a situation "inconsistent with the purposes of the statute at issue." *See Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 706 n. 10, 103 S.Ct. 1467, 1471 n. 10, 75 L.Ed.2d 387, 400 n. 10 (1983). So it should be with estoppel. Accordingly, we find that equitable estoppel cannot be invoked to prevent a company from challenging the "employee status" of workers it had previously recognized as employees.

The decision of the Board is enforced.