**Dr. Martin TREPEL, Plaintiff–Appellant,**

v.

**ROADWAY EXPRESS, INC., Defendant–Appellee.**

No. 00–3880.

United States Court of Appeals, Sixth Circuit.

June 27, 2002.

**106**

Before COLE and GILMAN, Circuit Judges; and MILLS, District Judge.*

## OPINION

COLE, Circuit Judge.

Dr. Martin Trepel asks us to review, for a second time, damages assessed against

Roadway Express, Inc. ("Roadway") for breaking his unique wooden snake carving. In *Trepel v. Roadway Express, Inc.,* 194 F.3d 708 (6th Cir.1999) (*Trepel 1*),[1] we found that evidentiary errors warranted remand to the district court for a second trial on damages. Trepel now seeks a third trial, alleging that sundry procedural and evidentiary rulings tainted the result of his second trial. Roadway responds that none of Trepel's allegations are meritorious, and that any errors that might have occurred were harmless.

Because nothing in this record supports remand for another trial on damages, we **AFFIRM** the jury award and judgment of the district court.

## I. BACKGROUND

This dispute began with the purchase of a wooden snake. Mourtala Diop, a New York art dealer specializing in African art, offered to sell Trepel a carved wooden snake, known as a "Baga serpent." Trepel initially refused, but following numerous entreaties by the dealer, finally agreed to buy the snake for $15,000. *Trepel I,* 194 F.3d at 711.

The dealer made arrangements with a shipping company to have the snake transported by Roadway for delivery to Trepel's business residence. The snake arrived broken into three pieces. *Id.* Trepel then commenced a number of separate lawsuits, including one against Roadway. *Id.*

That case was tried before a jury in federal court in the summer of 1997 (the "1997 trial"). Key to the lawsuit was the pre-breakage value of the snake. Trepel argued that it was an extremely rare cere-

---

* The Honorable Richard Mills, Senior United States District Judge for the Central District of Illinois, sitting by designation.

1. *Trepel I* should not be confused with *Trepel v. Roadway Express, Inc.,* 266 F.3d 418 (6th Cir.2001), in which this Court heard an appeal on the issue of attorney fees and costs arising from these same parties and facts.

monial artifact, worth as much as $2.5 million. *Id.* As evidence, he sought to admit surreptitious recordings he had made of a telephone conversation with Shelley Dinhofer, who owned another Baga serpent. Dinhofer stated that she had been offered $2 to $2.5 million for the serpent, but had declined the offers. *Id.* at 716. Trepel also sought to admit expert testimony from appraisers who had based their estimates, in part, on the recorded conversation between Trepel and Dinhofer. *Id.*

The district court ruled that the Dinhofer recordings were inadmissible hearsay. The court also redacted any mention of Dinhofer's statement from the experts' reports, and would not permit the experts to make reference to Dinhofer's statement when asked how they arrived at their appraisal amounts. *Id.* The jury returned a verdict and award of $80,000 for Trepel, and both sides appealed. *Id.* at 711.

In *Trepel I,* we affirmed the district court judgment in most particulars. However, we also concluded that Trepel's experts should have been permitted to refer to the recorded Dinhofer statements as a basis for their estimates. *Id.* at 717; *see also* Fed.R.Evid. 703. We thus vacated the damage award and remanded to the district court for a trial on the damages issue only. *Trepel I,* 194 F.3d at 719.

That second jury trial commenced in district court on February 14, 2000 (the "2000 trial"). At the trial, Trepel introduced nearly half a dozen art and wood experts to attest to the high value of the carving. Three days later, the jury returned a verdict for Trepel and awarded him $155,000 in damages. Trepel moved for a new trial, alleging numerous prejudicial errors in the conduct of the case. That motion was denied; Trepel now appeals.

## II. DISCUSSION

Trepel alleges that the 2000 trial on the damages issue was riddled with error. First, he argues that the district court imposed a stringent time limit for the parties to present their cases, refused to allow more time, and then made a timekeeping error that severely impaired his ability to cross-examine defense witnesses. Second, he alleges that the district court exceeded the mandate on remand when it permitted Roadway to litigate the issue of the authenticity of the carving. Finally, he alleges that the district court committed various prejudicial procedural and evidentiary rulings that included: (1) rendering inconsistent dispositions respecting the testimony of defense witness Helene LeLoup; (2) allowing witness Shelley Dinhofer to volunteer a prejudicial "statement for the record" and disallowing portions of the recorded telephone call to be read into evidence; (3) adding Roadway's "wood science" expert at the last minute; (4) permitting Roadway to introduce expert opinion of carbon–14 testing of the carving; and (5) permitting the $15,000 purchase price to be introduced without foundation.

### A. Time Limit and Timekeeping Errors

Prior to trial, the district judge ordered that each side would have ten hours (600 minutes) to present its case. Trepel argues that this time limit was unreasonable from the beginning, considering that the 1997 trial had required twelve days. He also argues that, as plaintiff, he should have had more time to set the "foundation" for his argument.

#### 1. *Standard of Review*

We review a district court's scheduling decision for abuse of discretion. *Sutkiewicz v. Monroe County Sheriff,* 110 F.3d 352, 361 (6th Cir.1997). We have held that

a district court has broad discretion to place limits on the presentation of evidence to prevent delay, waste of time, and needless presentation of cumulative material. *Id.* (permitting a twenty-five hour time limit).

### 2. *Analysis*

Trepel's argument is impassioned but unpersuasive. Although Trepel cites dicta from three cases disfavoring time limits, *see Monotype Corp. v. Int'l Typeface Corp.*, 43 F.3d 443, 451 (9th Cir.1994); *McKnight v. Gen. Motors Corp.*, 908 F.2d 104, 114–115 (7th Cir.1990); and *Flaminio v. Honda Motor Co.*, 733 F.2d 463, 473 (7th Cir.1984), in none of these cases did the imposition of the time limit lead to a reversal. Similarly, we find no cause to reverse here.

■ The district court's time limit was reasonable. The district court was not mandated to retry the entire case, only the issue of damages. *Trepel I*, 194 F.3d at 719. The district court permitted plaintiff to introduce multiple expert witnesses over the objections of Roadway. Having permitted the examination of multiple expert witnesses, it was reasonable for the trial court to set time limits to ensure the expert testimony was not unnecessarily repetitious.

Neither will we reverse because the district court gave equal time to both parties. Trepel may have had the burden to lay the evidentiary "foundation" for his argument, but this burden alone is no cause to find equal time between the parties *per se* unreasonable. *See Sutkiewicz*, 110 F.3d at 361 (twenty-five hour time limit per side not an abuse of discretion). Trepel has failed to make any other showing to support a finding of prejudice in this circumstance.

■ Trepel also argues that the district court erroneously informed him that he had used 555 minutes of time, when, in fact, he had only used 511 minutes. Trepel alleges that he learned that he had forty-four minutes remaining only after the close of all evidence, and that this error caused irreparable prejudice to his case. We do not agree. At the final tally, Trepel spent over an hour more on his presentation than did Roadway. Further, Trepel's evidence at trial was largely cumulative. Hence, even if there was a timekeeping error, it was far from "irreparably prejudicial." *See Gen. Signal Corp. v. MCI Telecomm. Corp.*, 66 F.3d 1500, 1509 (9th Cir.1994) (no error when plaintiff wasted time presenting duplicative evidence).

### B. Mandate Rule

Trepel argues that the district court erred by permitting Roadway to litigate the issue of authenticity. Although it is lumped in with briefing on evidentiary errors, Trepel's argument boils down to an allegation that the trial court exceeded this Court's remand for trial on the "damages issue only." *See Trepel I*, 194 F.3d at 719.

### 1. *Standard of Review*

"In deciding whether the District Court properly followed our directions on remand, we consider whether it properly interpreted our mandate, whether it fully carried out required procedures, and whether its factual findings were clearly erroneous." *Hawkes v. IRS*, 507 F.2d 481, 482 (6th Cir.1974). This "mandate rule" is a specific application of the "law of the case" doctrine; as such, a trial court may consider those issues not expressly or impliedly decided by the appellate court or the prior trial court. *Jones v. Lewis*, 957 F.2d 260, 262 (6th Cir.1992) (citing, *inter alia, Hawkes*, 507 F.2d at 482 n. 1).

## 2. *Analysis*

■ Trepel points to language in both the 1997 trial judgment and in our decision in *Trepel I* to support his claim that the authenticity issue was "expressly or impliedly" decided. *Cf. Jones*, 957 F.2d at 262. His first citation is to the 1997 district court judgment, denying Roadway's motion for judgment as a matter of law, in which Judge Bell opined that it was reasonable for the jury to find the snake was "authentic." His second citation is to language in our *Trepel I* opinion that "[t]he evidence at trial revealed that the serpent carving is an authentic carving from the Baga tribe in Africa." *Trepel I*, 194 F.3d at 711. Neither of these citations persuade us that the district court exceeded the mandate.

While we retain plenary authority to review the district court's implementation of the mandate, the interpretation of that mandate is directed to a "court's common sense." *See Owens Corning v. Nat'l Union Fire Ins. Co.*, 257 F.3d 484, 497 (6th Cir.2001). Common sense would dictate that whether the snake was worth a hundred dollars or a million dollars would require some testimony as to whether the carving was an actual Baga serpent. The same facts that determine authenticity will often determine value, especially in the present case, where the carving is unique, comparators rare, and the market very limited.

Further, we find nothing in prior decisions that precluded litigation over authenticity. We find Judge Bell's discussion of authenticity in the 1997 case to be dicta—a speculation on what may have justified the jury award. As dicta, it is not binding on remand. *See Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir.1997). For the same reason, our comments on the evidence in *Trepel I* cannot reasonably be construed as prohibiting any discussion of the authenticity of the wooden snake, especially when that discussion goes to the ultimate question of value. Therefore, we find the district court did not exceed the mandate.

## C. Procedural and Evidentiary Errors

Trepel alleges that a series of procedural and evidentiary errors required the district court to grant him a new trial.

### 1. *Standard of Review*

We review the denial of a new trial for an abuse of discretion. *Cathey v. Johns–Manville Sales Corp.*, 776 F.2d 1565, 1572–73 (6th Cir.1985). We also review evidentiary rulings for an abuse of discretion, *United States v. Humphrey*, 279 F.3d 372, 376 (6th Cir.2002), which will lead to reversal only if the error interferes with substantial justice. *Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 382 (6th Cir.1997); *see also* Fed.R.Civ.P. 61.

### 2. *Analysis*

*Admission of Helen LeLoup's Deposition*

■ Trepel argues that the district court erred by permitting certain portions of defense witness Helen LeLoup's videotaped deposition to be admitted into evidence.

LeLoup is a Parisian art dealer whom Trepel alleges he had previously consulted in this case. Upon notice that Roadway planned to depose her, Trepel filed an emergency motion for a protective order under Fed.R.Civ.P. 26(c), claiming that LeLoup was a non-testifying expert witness for Trepel. This motion was referred to a magistrate judge and granted. Both parties agree that the order protecting LeLoup from deposition did *not* include testimony she could offer as a "fact witness."

Roadway videotaped LeLoup's testimony in which she responded to questions about her conversations with Trepel and expressed her opinions on African art. Roadway then filed a notice of intent to introduce certain portions of the deposition at trial, and objections to the protective order, to which Trepel filed a motion in opposition. The district court considered the motions, reviewed the deposition transcript, and permitted the testimony to be admitted, subject to the caveat that the testimony would be limited to lay testimony. See Fed.R.Evid. 701.

Trepel alleges on appeal that the court allowed the testimony of his non-testifying expert and allowed her expert opinion to be introduced under the guise of lay testimony. Certainly, expert witnesses retained in anticipation of litigation, but not expected to testify, are protected from discovery under Fed.R.Civ.P. 26(b)(4)(B). The privilege may only be breached by a showing of exceptional circumstances. See USM Corp. v. Am. Aerosols, Inc., 631 F.2d 420, 424 (6th Cir.1980); see also Burka v. U.S. Dep't of Health & Human Servs., 87 F.3d 508, 518 (D.C.Cir.1996). Even if we accept Trepel's evidence that he retained LeLoup as an expert witness, Trepel did not object to the deposition of LeLoup as a "fact witness." The district court limited the testimony of LeLoup to only those matters observed by her or rationally based upon LeLoup's perceptions under Rule 701. Trepel's litany of alleged "expert opinions" is largely no more than LeLoup's own perceptions. Although LeLoup did claim some expertise in African art, she disavowed any special scientific credentials, stating "I am not a scientific person."

Even if we concluded that her testimony crossed the line into impermissible "expert opinion," the testimony was countered by the numerous expert witnesses Trepel was permitted to introduce to establish value. See Slayton v. Ohio Dep't of Youth Servs., 206 F.3d 669, 677 (6th Cir.2000) (improper admission of lay testimony harmless in light of all of the evidence). Thus, we find any error in this case to be harmless.

*Deposition of Shelley Dinhofer*

The parties deposed Shelley Dinhofer, owner of another Baga serpent, for admission into evidence. Dinhofer was the art collector whom Trepel had secretly recorded prior to the 1997 trial. Trepel asserts the court committed two errors with respect the Dinhofer deposition. The first is the admission of a "statement for the record" in the deposition, in which Dinhofer expressed her outrage that she had been surreptitiously recorded by Trepel. The second is the court's ruling that the transcript of the recorded telephone conversation was inadmissible hearsay.

Prior to trial, the parties designated portions of the Dinhofer deposition to be read to the jury. Trepel did not clearly object to Dinhofer's "statement for the record" during the deposition; therefore, we find this objection to have been waived. Fed.R.Civ.P. 32(d)(3)(B).

Trepel also argues that, because Roadway had designated certain portions of the telephone transcript to be used as evidence, he should have been able to place other contemporaneous portions into evidence under the rule of completeness. See Fed.R.Evid. 106. At trial, however, Trepel sought to admit the entire transcript, rather than relevant portions of it, as evidence of Dinhofer's "true statement." A district court is not obliged to admit the entire document under Rule 106. See Paul Arpin Van Lines, Inc. v. Universal Transp. Servs., Inc., 988 F.2d 288, 293–94 (1st Cir.1993); see also United States v. Haddad, 10 F.3d 1252, 1258–59 (7th Cir. 1993). This is especially so when, as here, Dinhofer was not under oath and was

equivocal about the truth of everything in the transcript. As a result, we do not find that the court abused its discretion in denying admission of the transcript.

*Wood Science Expert Dr. Eugene Wengert*

Trepel argues that he was unfairly surprised by the last-minute addition of Roadway's "wood science" expert, a violation of Fed.R.Civ.P. 26. Trepel argues that Roadway initially stated that it would not call a wood expert, and that the district court had ruled that no expert witnesses would be permitted to testify who had not testified prior to *Trepel I*. Nevertheless, Roadway filed a motion seeking leave to call Dr. Eugene Wengert as a defense expert. The trial court postponed its final ruling, but did order that Dr. Wengert be available for deposition. Trepel's counsel objected on the grounds that he had no time to prepare given the late announcement of this witness. Trepel argues that the court then prejudiced his case when it finally permitted Dr. Wengert to testify after the trial had begun.

Rule 26 is designed in part to eliminate unfair surprise. *Licciardi v. TIG Ins. Group*, 140 F.3d 357, 363 (1st Cir.1998). However, surprise does not merit reversal unless it deprives a party of a fair hearing. *Twigg v. Norton Co.*, 894 F.2d 672, 675 (4th Cir.1990). Such a reversal is mandated when, for instance, a witness introduces a new theory into the case. *Id.*

■ It does appear that Roadway added Dr. Wengert as a witness late in the proceedings and failed to offer a reasonable basis for the delay. Nevertheless, we do not find the late introduction of Dr. Wengert prejudicial to Trepel. Trepel was

permitted to introduce two experts, Dr. Robert Koestler and Dr. Dennis Stevenson, to testify about how insect infestation and wood marks indicate the age of the carving. Having introduced this evidence, it was only logical that Trepel should expect his experts' conclusions to be challenged by Roadway. Dr. Wengert's testimony did not introduce any new theory, but critiqued the evidence that Trepel's wood science experts had used to determine the snake's quality and age. Further, although Trepel complains that he was not given adequate time to prepare for or depose Wengert, he did not seek a continuance in which to prepare. Hence, we do not find any reversible error in this case. *See United States v. Midwest Suspension & Brake*, 49 F.3d 1197, 1205–06 (6th Cir.1995) (no error where a party has notice that a court may change its ruling but fails to request a continuance to prepare).

*Carbon–14 Testing Argument*

Prior to trial, the magistrate judge denied Roadway's motion to compel plaintiff to produce the snake for carbon–14 testing.[2] Trepel moved *in limine* to prohibit all argument based on carbon–14 testing because neither side had performed any testing. That motion was denied.

■ Trepel argues that the court prejudiced his case by permitting Roadway's experts to insinuate that Trepel did not conduct a carbon–14 test because he knew it would disprove his case. He argues that he should have been allowed to testify as to what two non-testifying expert witnesses told him—that carbon–14 testing is

2. Carbon–14 is a radioactive isotope of the carbon atom. Because it decays at a uniform rate, scientists can estimate the age of an object by extrapolating from the carbon–14 isotopes remaining in the object. *See* Janet

Kalt–O'Bannon, Comment, *Scientific Dating and the Law: Establishing the Age of Old Objects for Legal Purposes*, 63 UMKC L. Rev. 93, 101–07 (1994).

an inaccurate measure of age in items less than 200 years old.

We do not find any error. The point that Trepel continually makes in his brief, that carbon–14 testing is inaccurate in relatively new items, was clearly and adequately presented by Trepel's witness, Dr. Koestler. Any additional testimony that Trepel would have introduced by way of hearsay would have been duplicative. Dr. Koestler's testimony provided a sufficient basis for the jury to believe or discount the reason why Trepel did not conduct carbon–14 tests. There was no error.

*The $15,000 Purchase Price*

█ Trepel argues that he was prejudiced because the $15,000 purchase price was introduced without evidence that the price reflected "fair market value." He argues that he should have been able to testify about Diop's desperation to sell the snake.

We reject Trepel's argument. Trepel himself put the purchase price of the snake into evidence on direct examination. Further, purchase price is probative of value. *See, e.g., Estate of Kaplin v. Comm'r,* 748 F.2d 1109, 1111 (6th Cir.1984) ("In determining the fair market value of property, little evidence could be more probative than the direct sale of the property in question."); *cf.* 26 C.F.R. 1.170A–1 (c)(2) (Treasury Reg.) ("The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.").

It was Trepel's burden to establish the fair market value of the snake by admissible evidence. Trepel had an opportunity to elicit evidence that Diop had operated under compulsion by cross-examining Roadway's experts, but failed to get such evidence. He has given no plausible argument to support a bare admission of Diop's

out-of-court statements, *Trepel I,* 194 F.3d at 718 (noting that such an introduction would be classic hearsay), and has made no showing that Diop's inaccessibility or hostility constituted a recognized exception to the hearsay rule. *Cf.* Fed.R.Evid. 804. In any event, even if the exclusion of the out-of-court statements of Diop was error, it was more than corrected by the testimony of Trepel's experts as to the potentially high value of the carving. We find no reason to reverse the district court.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the jury award and judgment of the district court.