NOT RECOMMENDED FOR PUBLICATION
File Name: 07a0412n.06
Filed: June 18, 2007

No. 06-1590

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| SHEILA ALLEN, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

**Before: COLE, CLAY, and GILMAN, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.** Sheila Allen appeals from her conviction and sentence for making false claims to the Internal Revenue Service (IRS) regarding tax-refund eligibility. Allen contends that the government failed to produce sufficient evidence to support her conviction, that the district court erred in denying the request of Allen's trial attorney to tell the jury during closing argument of the existence of allegedly exculpatory evidence, and that she received the ineffective assistance of counsel. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

**I. BACKGROUND**

Allen ran a tax preparation service from her home in Detroit, Michigan. She would prepare a tax return for a fee of approximately $200. Allen preferred to minimize the number of visitors to her home, so she used an intermediary to gather relevant information. When preparing a tax return for a client that she had not personally met, Allen would call the client to verify income information by telephone. Either Allen or her client would then file the completed return with the IRS.

Many of Allen's clients had little to no income, meaning that they would not normally have owed federal income tax, much less have been entitled to a tax refund. The government alleged that Allen created false Schedule C forms for some of them. These false Schedule C forms purported to reflect income generated from self-employment, such as for janitorial services or child care. This income, however, was fictitious. Allen also entered deductions for these clients' nonexistent minor dependents on the tax return. The client would thus purportedly owe self-employment tax from the fabricated Schedule C income. But the tax return also indicated that the client was responsible for qualifying minor dependents and therefore eligible for the earned income tax credit, a refundable credit for low-income working individuals and families. When the earned income tax credit exceeds the amount of taxes owed, the taxpayer receives a refund for the excess amount. *See* I.R.C. § 32 (describing the earned income tax credit); 26 U.S.C. § 152(c) (defining a "qualifying child"). A number of Allen's clients, according to the government, received tax refunds to which they were not entitled as a result of Allen's falsification of their tax returns.

As a result of Allen's calculations, the tax returns in question showed that the client's earned income tax credit exceeded the amount of income and self-employment tax allegedly due, thereby generating a windfall to the client in the form of a tax refund on income that the client had not in fact

earned. In some instances, the government contended that the people in whose names Allen prepared tax returns were not in fact Allen's clients, never saw the tax returns filed on their behalf, and did not receive the fraudulent tax refunds. These tax refunds were allegedly sent to and deposited by other clients of Allen's.

The government charged Allen with 40 counts of making, or causing others to make, false claims to the IRS relating to tax refunds, in violation of 18 U.S.C. § 287. Allen did not testify at trial. At the close of the government's proof, Allen's attorney moved for a judgment of acquittal (erroneously calling it a motion for a directed verdict). The district court denied the motion, but invited Allen's counsel to renew it at "anytime." Allen's attorney, however, never renewed the motion. A jury convicted Allen on 25 counts of making false claims to the IRS. The district court subsequently sentenced her to concurrent terms of 15 months' imprisonment for each count. No motion for a new trial was ever filed.

## II. ANALYSIS

### A. Sufficiency of the evidence

#### 1. *Standard of review*

We are limited in our review of Allen's claim that there was insufficient evidence to convict her because she failed to renew her motion for a judgment of acquittal after the jury returned its verdict, and further failed to file a motion for a new trial. The standard of review for Allen's challenge to the sufficiency of the evidence against her is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." *United States v. Davis*, 473 F.3d 680, 681 (6th Cir. 2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)). "Where . . . a defendant fails to renew a motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29 at the close of all proofs, appellate review is limited to determining whether there was a manifest miscarriage of justice. " *United States v. Abdullah*, 162 F.3d 897, 903 (6th Cir. 1998) (quotation marks omitted). "A miscarriage of justice exists only if the record is devoid of evidence pointing to guilt." *Id*. (quotation marks omitted).

### 2.    *Analysis*

No miscarriage of justice occurred in this case. Allen was charged with making false or fictitious claims to the government, in violation of 18 U.S.C. § 287. Section 287 provides that

> [w]hoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be imprisoned not more than five years and shall be subject to a fine in the amount provided in this title.

During the trial, the government presented evidence that Allen ran a tax-preparation business, that she had a business stamp that allowed her to file tax returns electronically, and that some of the returns offered in evidence bore that stamp and listed Allen's business as the tax preparer. The government also adduced evidence that Allen had admitted to an IRS agent that she had prepared tax returns for certain clients whose filings contained fraudulent information, and that she used an intermediary to gather information from potential clients. Several witnesses testified that they did not know Allen and had never used her services, but that tax returns had been prepared and filed in their names by Allen. In some instances, these returns contained fraudulent information.

Allen contends, however, that the "[m]ere preparation of false returns without more does not violate th[e] statute." Under this court's prior decisions, however, Allen's argument fails. *See United States v. Murph*, 707 F.2d 895, 896 (6th Cir. 1983) (holding a defendant liable under § 287 where he filed a fraudulent tax return through a third-party tax return service because the service's act of filing the return was "clearly understood and foreseen by the defendant and thus the defendant 'caused' the return to be presented"); *see also United States v. Hebeka*, 89 F.3d 279, 282 (6th Cir. 1996) (discussing the history of § 287 and noting that "the actual presentation of a claim to a government agency is not necessary to satisfy § 287"); *United States v. Campbell*, 845 F.2d 1374, 1382 (6th Cir. 1988) (holding that criminal liability under § 287 attached to a physician who submitted false insurance claims to the government through a third-party insurer). Here, as in *Murph*, Allen understood and anticipated that the tax returns she falsified would be filed with the IRS. *See Murph*, 707 F.2d at 896. Allen thus "caused" the fraudulent returns to be filed, thereby violating the statute.

The evidence set forth above was sufficient for a rational trier of fact to find Allen guilty beyond a reasonable doubt of making false claims to the IRS regarding tax-refund eligibility. The record before the panel is certainly not "devoid of evidence pointing to guilt," and thus no miscarriage of justice occurred in this matter that would entitle Allen to relief from the judgment of conviction entered against her.

Allen concedes on appeal that her trial attorney's failure to renew the motion for a judgment of acquittal after the jury verdict or to file a motion for a new trial "impair[s] the ability to seek a new trial." She argues, however, that we should not be constrained by the rule set forth in *Cone v. West*

*Virginia Pulp & Paper Co.*, 330 U.S. 212 (1947), that an appellate court lacks the power to direct a district court to enter judgment as a matter of law where the appellant failed to so move. *Id*. at 217-18 (holding that the appellate court lacked authority to direct the district court to enter a judgment notwithstanding the verdict where the appellants had failed to seek such relief or to file a motion for a new trial).

Allen urges us to "jettison" *Cone* because it "engages in a flawed legal assumption which has not stood the test of time." She fails to explain, however, why *Cone* "has not stood the test of time" or what "flawed legal assumption" undergirds it. The initial problem with Allen's argument is that *Cone* deals with a civil trial and addresses the Federal Rules of *Civil* Procedure. Allen, in contrast, was convicted in a criminal trial that is governed by the Federal Rules of *Criminal* Procedure. *Cone*, therefore, has no direct bearing on the present case. Moreover, we have no authority to overrule the Supreme Court. *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 535 (1983) ("Needless to say, only this Court may overrule one of its precedents.") We finally note in passing that the Supreme Court recently reaffirmed *Cone*. *See Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006). For these reasons, we find no merit in Allen's suggestion that we "jettison" *Cone*.

Her contention that there is "clear error" in this case is likewise unavailing, due to a lack of specificity as to the nature of the alleged error. The failure of Allen's trial attorney to renew the motion for a judgment of acquittal or to seek a new trial may well constitute the ineffective assistance of counsel, but it in no way supports a challenge to the sufficiency of the evidence against Allen.

**B.      Limitation on defense counsel's closing argument**

Allen next argues that the district court erred when it sustained the government's objection

to the comment of her counsel during closing argument that the government had offered only a

selective record of Allen's pretrial statements to the IRS agent. Such rulings by the district court are

reviewed under the abuse-of-discretion standard. *See United States v. Hynes*, 467 F.3d 951, 957 (6th

Cir. 2006) (holding that a trial court's interruptions of defense counsel to clarify the law or the facts

did not constitute an abuse of discretion or deny the defendant a fair trial).

At a sidebar conference, Allen's attorney argued that the hearsay rule had precluded him from

cross-examining the IRS agent about exculpatory portions of Allen's pretrial statements. Instead,

he sought to tell the jury during closing argument that the IRS agent's testimony was incomplete, but

that the defense counsel could not introduce the whole statement. He argued that "[t]he Defendant

should have been able to let the jury realize that they only received bits and pieces from the [pretrial]

statement . . . . Where only the Government could introduce the evidence, the Defendant is

permitted to comment on their decision not to."

We first note that Allen has never identified the allegedly exculpatory information that she

wanted the jury to hear, which limits our ability to assess the merits of this issue. But that is not fatal

to her argument. What is fatal are Rules 106 and 611(a) of the Federal Rules of Evidence. Rule 106

provides that

> [w]hen a writing or recorded statement or part thereof is introduced by a party, an
> adverse party may require the introduction at that time of any other part or any other
> writing or recorded statement which ought in fairness to be considered
> contemporaneously with it.

Although the rule of completeness at common law applied to oral statements, by its terms Rule 106 applies only to "writing[s] or recorded statement[s]." Fed. R. Evid. 106; *cf. United States v. Costner*, 684 F.2d 370, 373 (6th Cir. 1982) (comparing the common law and codified rule). We have never explicitly held that Rule 106 applies only to writings or recorded statements, although dicta from our caselaw has suggested as much, and we have applied the Rule in that way. *See, e.g.*, *Trepel v. Roadway Express, Inc.*, 40 F. App'x 104, 110 (6th Cir. 2002) (a telephone transcript); *United States v. Branham*, 97 F.3d 835, 850 (6th Cir. 1996) (audiotapes); *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 729 (6th Cir. 1994) (written reports).

IRS Agent Prim on direct examination said that she interviewed Allen on two occasions before Allen was formally indicted. Agent Prim testified as to several statements that Allen made during those interviews about tax preparation, electronic filing, and the identities of individual clients. Allen's attorney did not object to any of Agent Prim's direct testimony. We are unable to determine from the transcript whether Agent Prim testified on the basis of her written memoranda of the interviews alone or whether she also relied on her recollection of the interviews with Allen. Moreover, Allen's brief does little to clarify whether the allegedly exculpatory information would have come from the memoranda of the interviews or from the agent's recollection of Allen's oral statements. The entire cross-examination of Agent Prim consisted of the following five questions:

> Q: When you spoke to Mrs. Allen, did you prepare a memorandum of interview?
> A: Yes, I did.
> Q: Would there be two memorandums of interviews that you prepared?
> A: I contacted her on two separate occasions, so there's a memorandum for each of those contacts.

Q:     Assistant United States Attorney has asked you did you ask Miss [*sic*] Allen about different subject matters, correct?
A:     That's correct.
Q:     Okay.  Have you indicated and testified today as to all of the things that Miss Allen told you?
A:     No.
Q:     Now, there's some things that she told you that you've not testified about that are contained in the interview reports?
A:     Yes.
Q:     No further questions.

Notwithstanding these questions, the record does not suggest that the government ever introduced Agent Prim's memoranda of the interviews into evidence.

At no time did Allen seek to admit any additional portions of her pretrial statements made to Agent Prim.  Rule 106 of the Federal Rules of Evidence would have allowed Allen to require that the government introduce any otherwise admissible statements that "ought in fairness to be considered contemporaneously with [the offered statements]." *See Trepel v. Roadway Express Inc.*, 194 F.3d 708, 718 (6th Cir. 1999) ("[T]he completeness doctrine embodied in [Federal] Rule [of Evidence] 106 should not be used to make something admissible that would otherwise be excluded.").

To the extent that Allen sought to introduce exculpatory portions of *oral* statements made to Agent Prim, on the other hand, the district court had complete discretion to require the government to introduce the balance of those statements under Rule 611(a) of the Federal Rules of Evidence.  Rule 611(a) provides in pertinent part that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth."  This rule has been

interpreted to parallel Rule 106. *See United States v. Shaver*, 89 F. App'x 529, 532 (6th Cir. 2004) ("[Rule 611(a)] is the 'equivalent' of Rule 106 for oral statements.") (quoting J. Weinstein & M. Berger, Evidence ¶ 106[01] (1986)).

Instead of properly utilizing either Rule 106 or Rule 611(a), however, Allen's trial attorney told the jury in his closing argument that "[o]ne piece of evidence you do not have is the statement allegedly made by Mrs. Allen. I cannot introduce that statement. I cannot introduce it." The government objected to this comment on the ground that it was a "misstatement[] of law." In response, Allen's attorney argued that "certain portions of [Allen's] statement . . . would be considered exculpatory statements" that the defense could not introduce. The district court sustained the government's objection.

Allen exercised her constitutional right not to testify on her own behalf at trial. The fact that she chose not to take the stand, however, does not permit her to trump the rules of evidence or give her the authority to comment on prosecutorial strategy. Her failure to request that the government admit additional portions of her pretrial statements to Agent Prim and her decision not to testify served to limit the range of arguments that her attorney could make to the jury.

Because Allen does not identify the exculpatory statements about which she wished the jury to be aware, we are unable to determine whether those statements would have been admissible at trial. But Allen's attorney was wrong as a matter of law when he told the jury that he was unable to introduce Allen's pretrial statements. He might well have been able to introduce portions of those statements pursuant to Rule 106, but he never tried to do so. We therefore conclude that the district

court did not abuse its discretion in sustaining the government's objection to this part of the closing argument by Allen's counsel.

**C.      Ineffective assistance of counsel**

Allen's final argument is that she received the ineffective assistance of counsel at trial because her attorney failed to renew the motion for a judgment of acquittal, failed to file a motion for a new trial, and failed to admit into evidence the portions of the IRS investigatory report that contained Allen's allegedly exculpatory statements.  We usually decline to review an ineffective-assistance-of-counsel claim on direct appeal because the record is typically insufficiently developed to permit an assessment on the merits.  *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997).  "This rule stems from the fact that a finding of prejudice is a prerequisite to a claim for ineffective assistance of counsel, and appellate courts are not equipped to resolve factual issues." *Id*. (citation omitted).  Instead, this court prefers that allegations of ineffective assistance be brought in a postconviction proceeding under 28 U.S.C. § 2255, in which the parties can "develop an adequate record on the issue." *United States v. Abdullah*, 162 F.3d 897, 905 (6th Cir. 1998).

But this rule is not absolute.  "When . . . the record on appeal is sufficient to address the merits of the defendant's claim, this court may nevertheless resolve the substantive issue before it." *Id*.  In the rare instances where this court has reached ineffective assistance claims that were not first presented to the district court, however, it has generally denied them.  *See, e.g.*, *Abdullah*, 162 F.3d at 905 ("Here, we have before us all information necessary to determine that defense counsel's representation was not so deficient under the analysis set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), as to mandate a retrial.") (citations omitted).

The reasoning behind the failure of Allen's attorney to renew his motion for a "directed verdict" (judgment of acquittal) despite the district court's express invitation to do so is puzzling. In its oral ruling on Allen's motion, the district court stated as follows:

> Let me say to you right now, Mr. Barnett [Allen's attorney], that I agree with you and I'm bothered by the fact that, to the best of my recollection, there's very little attaching your client to all of the testimony here. I'm not going to grant that right now, a motion for a directed verdict, but I want to consider this. And of course you know that that motion is good anytime, including when the jury is out. . . .

> I'll deny the motion without prejudice. Whether I denied it with or without prejudice, under the rules and the law, Mr. Barnett can make the motion again anyway, and I'm going to let the case go to the jury. . . .

> And if I take this up again, and I have a feeling it will come to me again, I want some time to think about it and examine the evidence and see if I'm satisfied that the elements the Government needs to satisfy are satisfied. It's one thing to say, as one can say on this record I think, that one could conclude, if one were doing a multiple choice test, that Miss Allen was involved in this thing in just the way the Government says she was involved. It's another thing to say that the evidence is there that is needed technically and beyond a reasonable doubt, and anyway that's my ruling. The motion is denied without prejudice.

But without a more fully developed record, we can only speculate as to why defense counsel did not renew the motion for a judgment of acquittal or seek a new trial.

The failure of Allen's attorney to seek the admission of additional portions of Allen's pretrial statements to Agent Prim is also difficult to justify. Without any information about the statements, however, we cannot conclude that Allen's attorney provided constitutionally defective representation. We recognize that requiring an appellant to raise her ineffective-assistance claim through a petition for postconviction relief under 28 U.S.C. § 2255 is time-consuming. Nonetheless, we do not believe that the present record is sufficiently developed for us to rule on Allen's claims

at the present time. Allen is presently out on bond pending appeal, and we assume that the district

court will be in a position to proceed expeditiously if she decides to file a § 2255 petition.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.